# WHEELING.

## NUZUM v. MORRIS et als.

Submitted June 13, 1884.—Decided April 11, 1885.

1. Opposite demands arising out of judgments or decrees between the same parties in the same right may be set off against each other, whenever it is equitable to do so; but the application for this relief should not be delayed, until the interests of third parties have become involved. (p. 566.)

2. Upon an application for this purpose the court is not bound by legal rules to set off such judgments in all cases, even when they are in the same right and between the same parties. (p. 565.)

3. Such application is addressed to the discretion of the Court, and in the exercise of this discretion, even when the set-off might be legally made, the Court will not grant the order allowing the set-off, if it clearly appears that injustice will be done thereby. (p. 567.)

4. A party thus entitled to such set-off, having subject to his control a special fund, primarily applicable to the satisfaction of his judgment or decree, will not be permitted to avail himself of his right of set-off against the assignee of such opposite judgment or decree,

until after such special fund is exhausted, and then only for any balance of his demand, which may remain unsatisfied. (p. 569.)

5. The defendant, Morris, had the right to require that Nuzum should first apply to the satisfaction of his decree against S. the proceeds of the sale of his land, which had been specially set apart for that purpose; and the right of N. to set off his decree against the judgment and decree of S. against him should be confined to any balance of his demand, which might remain unpaid after such proceeds were exhausted. (p. 569.)

6. The preliminary injunction awarded to N. should be continued in force, until such proceeds could be collected and applied, and such set-off made, at which time said injunction as to the amount of such set-off must be made perpetual and as to the unpaid residue of said judgment and decree against Nuzum wholly dissolved. (p. 570.)

7. The plaintiff's bill showing a clear right to this relief, although it is not specially prayed for, should be entertained, and the relief granted, as upon the case made it could properly be granted under his prayer for general relief. (p. 570.)

WOODS, JUDGE, furnishes the following statement of the case:

In a chancery suit brought and prosecuted to final decree in the circuit court of Wetzel county, by John H. Nuzum against David Simpson, Rawley Morris, J. W. Cotts and others, a decree was rendered against said Simpson on the 31st day of May, 1881, in favor of Justus Eakin and said Nuzum for the sum of $256.60 each, and in favor of Cotts for $93.36 with interest on each of said sums from the 17th of May, 1881. By the same decree the land of Simpson was directed to be sold, and the proceeds applied, first, to pay ratably to Eakin and Nuzum the amounts decreed to them, and after they were fully paid, then to pay the amount decreed to Cotts. On December 13, 1881, the land of Simpson was sold in pursuance of said decree for $602.00 of which one-fourth was paid in cash, and the residue was to be paid in six, twelve and eighteen months thereafter with interest, and on February 4, 1882, the sale was confirmed, and the special commissioners who made the sale were directed to collect the proceeds thereof as the notes fell due, and after paying the expenses attending the sale amounting to $50.55, and the costs of said suit, the amount of which does not appear,

then to apply the residue ratably to the satisfaction of the
amounts decreed to Eakin, Nuzum and Cotts in the order of
priority before stated.    The proceeds of said sale after the
payment of said expenses and costs were insufficient to pay
the amounts decreed to Eakin and Nuzum, upon each of
whose debts there will remain a balance of about $50.00,
after said proceeds are exhausted; and said Simpson being
insolvent, nothing will remain out, of which payment of these
balances and the judgment of Cotts can be enforced.    On
September 29, 1881, Simpson recovered in said court a judg-
ment against Nuzum for $183.00 with interest from that date
and $39.88 costs, and on the 18th of January, 1882, he ob-
tained therein a decree against said Nuzum for $123.54 with
interest from that day and $100.00 costs, both of which last
named debts were assigned by Simpson to the defendant,
Rawley Morris, on the 24th of January, 1882, of which as-
signment said Nuzum on that day had notice.    On the 12th
of April, 1882, executions were issued on said judgment and
decree against Nuzum, and the sheriff levied the same on his
goods.    On the 20th of May, 1882, Nuzum paid upon said
executions the whole amount due thereon except the sum of
$272.00, which was the amount of the principal and interest
of his decree against Simpson, the costs of his said suit hav-
ing been paid by said special commissioners out of the cash
payment received on the sale of said land, and the executions
were thereupon by the direction of Simpson's counsel, re-
turned to the clerk's office with the moneys paid endorsed
thereon by the sheriff.

Afterwards Morris caused new executions to be issued up-
on said judgment and decree, which were also levied.  Nuzum
then filed his bill in this cause on the 22d day of September,
1882, against the defendants, Simpson and Morris, setting
forth the foregoing facts and also averring that, at the time he
paid said amounts on the former executions, it was agreed be-
tween him and the counsel of Simpson, that the amount of
the principal and interest of his decree against Simpson
should be set off against that amount of the judgment and de-
cree obtained against him by Simpson; and that by reason
thereof, and the payment of said moneys the said judgment
and decree against him were fully paid off and discharged;

and he prayed that Simpson and Morris might be forever enjoined from all further proceedings to enforce collection from him of the residue apparently remaining unpaid, and for general relief; and the court thereupon awarded a preliminary injunction to that effect. To this bill the defendants filed their joint answer denying that any such agreement was ever in fact made by Morris or by any other person by his authority or consent, or that Nuzum ever paid any other moneys on said executions except what appears endorsed on the executions returned by the sheriff, and admitting all the other allegations of the bill to be true. To this answer a general replication was filed. On the 26th day of January, 1883, M. B. Davis, to whom Cotts assigned his judgment, filed his petition in said cause asking to be made a defendant therein, insisting that the said Nuzum had the legal right to make said set-off against the judgment and decree obtained against him by Simpson, and in order that he might be paid out of the proceeds of said sale of Simpson's lands, he prayed that Nuzum might be compelled to so set off his said decree. On the 30th of January, 1883, the cause was finally heard, and the court entered a decree admitting Davis as a party defendant to the suit and setting off the principal and interest of Nuzum's decree against the balance remaining unpaid upon the said judgment and decree of Simpson against him, and perpetuating said injunction as prayed for; and required the said Nuzum to file with the papers in said first named chancery suit a release of all claim to any part of the proceeds of the sale of Simpson's lands then made or thereafter to be made in said cause, which release was then and there executed and is described in the decree as " *Exhibit X.*"

From this decree Rawley Morris appealed to this Court.

*A. F. Haymond* for appellant.

*J. W. McCoy* and *T. P. Jacobs* for appellee.

WOODS, JUDGE:

Three questions are presented for our consideration :

1. Had the plaintiff the equitable right to set off against the judgment and decree recovered against him by Simpson

and assigned to Rawley Morris the amount of his decree against Simpson?

2. If the plaintiff had such right and exercised it, is the defendant Morris entitled to be substituted to the rights of the plaintiff against the proceeds of the sale of the real estate of Simpson, sold and specially decreed to satisfy the same?

3. Has the petitioner, M. B. Davis, the right to charge the proceeds of such sale with the amount of the judgment recovered by said Cotts against Simpson, in preference to the equitable right of Morris acquired by substitution to the rights of the plaintiffs against the proceeds of the sale of Simpson's property?

Before considering these questions let us enquire whether the plaintiff's bill in its present form can be sustained. The appellant's counsel insists in argument that the bill, if it had been demurred to, was fatally defective, and that although no demurrer was interposed, the circuit court on the hearing thereof should for that cause dismiss it. The alleged defect in the bill is a matter of form rather than of substance. Its allegations set out a state of facts, which, if true, entitles the plaintiff to the aid of a court of equity to set off the amount of his decree of $256.06 obtained against Simpson in satisfaction *pro tanto* of Simpson's decree and judgment against the plaintiff, but it does not in fact pray for this specific relief, and instead of doing so the plaintiff contents himself with averring in general terms that the same was in fact done, and that the said judgment and decree of Simpson against him were thereby fully paid and satisfied; whereas it clearly appears from the bill itself and from the exhibits therewith filed, that no such set-off was in fact made, but the whole matter, so far as the amount of the plaintiff's decree is concerned, rested upon an agreement to do so, made by the counsel of Simpson, without the authority or consent of the defendant Morris, which without his consent could not be performed and which never was performed; and praying that because of the matters alleged in the bill the defendants from all further proceedings to collect the balance apparently remaining unsatisfied upon said executions might be forever enjoined. It is insisted by appellant's counsel, that the bill

only shows a state of facts, in which he might have all the relief prayed for upon a motion to quash the executions by proving the facts alleged.   It does not follow that, because an execution may be quashed, the defendant may not in many cases upon the same state of facts also have the aid of a court of equity to prevent great loss or injury which might result from a forced sale of his property, before his motion could be heard and determined.   Admitting for the sake of the argument only, that the facts alleged in the bill are true as stated, and that upon a motion to quash said executions they could be proved, it is by no means certain that they would be sufficient to authorize this Court to sustain the motion to quash.   While the executions issued in the name of Simpson alone, he never had any lawful control over them.   The debts specified therein were assigned to Morris long before any of the executions issued, and no agreement made or executed could operate to discharge the same without his consent.   The equitable title to the debts mentioned in the executions belongs to Morris, while the naked legal title thereto continued in Simpson, and this fact was well known to the plaintiff.   So far from the balance of said debts having been paid as stated in the bill, it is certain that the matters between the plaintiff and the defendants remained precisely as they were before the alleged settlement was made.   Regarding the substance rather than the form of the bill we find that, courts of equity are authorized to set off a judgment or decree rendered against one defendant in favor of a plaintiff against another decree rendered in favor of such defendant against such plaintiff, when the plaintiff's bill sets out such a state of facts, as would entitle him to pray that such set-offs should be made, and that such defendant be enjoined from all further proceedings to collect from such plaintiff the amount of his decree against him.   If having clearly shown himself entitled to this relief and he has failed in the prayer of his bill to specifically ask for it, the Court will, if the proofs warrant it in doing so, grant this under the prayer for general relief.

The defendant Morris obtained his assignment January 24, 1882, on which day the plaintiff had notice thereof. . The plaintiff's decree against Simpson obtained on May 31, 1881, under which his real estate was sold on December 13,

1881, for $602.00, was rendered in a suit in which said Morris was a co-defendant. By the decree confirming said sale the court directed the commissioners, who made the same, to collect and apply the proceeds thereof to pay the expenses of the sale amounting to $50.55 and the costs of the suit, the amount of which does not appear, and the residue to apply ratably to the satisfaction of the said amounts decreed to the plaintiff and said Eakin, and then to pay Cotts the amount of his judgment. Assuming that the down payment of $150.50 will be more than sufficient to pay said costs and expenses, there remains of said proceeds $451.50 with interest from December 13, 1881, applicable to the payment of the sums decreed to be paid to said Eakin and the plaintiff, amounting on February 4, 1882, when the sale was confirmed, to the sum of $266.64 each, which will leave unpaid upon the plaintiff's decree against Simpson only the sum of $39.00 with interest from February 4, 1882, until paid, and whatever right of set-off the plaintiff may have for his whole decree, will equally apply for the security of the said sum of $39.00 and its interest. Why this purchase-money has not been collected and applied as directed by the decree confirming the said sale does not appear. The order suspending the execution of the decree of May 31, 1881, expired by its own limitation at the next term of the circuit court, and was never enlarged nor reversed, and if there ever was any doubt on that subject it was removed by the decree confirming the sale and directing the commissioners to collect and disburse the proceeds thereof.

Had the plaintiff the right to set off the amount of his decree against Simpson against the amounts due from him on said judgment and decree assigned to the defendant Rawley Morris? Whatever may have been its origin, the law authorizing the court to set off one judgment against another, where they are due to and from the plaintiff and defendant therein in their own right, is now too well settled to be called in question. This equitable practice of setting off one judgment against another under such circumstances has been permitted even in the common law courts of England for more than a hundred years. Since 23 Geo. II. nearly all the cases have uniformly allowed demands arising upon opposite judgments to be set off one against

the other. *Bull. Nisi Prius* 356; *Wills* v. *Crabb*, E. 24 Geo. II, *Ibid*. A plaintiff being non-suited the defendant took out a *fi. fa.* and levied part of the costs, and at the same time took out a *ca. sa.* for the rest and took the plaintiff in execution which being irregular the court set it aside with costs, the defendant moved that the proceedings against him on account of these costs should be stayed upon his entering up satisfaction upon the judgment obtained by him for the sum, at which the costs for the irregularity were taxed, and upon showing cause the rule was made absolute. The same was done in *Scoffin* v. *Robinson*, at E. T. 26 Geo. II. 2 Blackst. 826, and also in *Thrustout on demise of Barnes* v. *Crafter*, 2 Blackst. 826, T. T. 12 Geo. III. See *Glaister* v. *Heuer*, 8 T. R. 69; *Barker, administrator* v. *Braham*, 2 Blackst. 896; *Talbert executor* v. *Harrison*, 1 Baily 599; *Mitchell* v. *Oldfield*, 4 T. R. 123; *Nunez* v. *Modigliani*, 1 H. Blackst. 217; Montague Law of Set Off 5, 6 and 7; *Burns* v. *Thornburg*, 3 Watts. 78; Tucker's Com's, Book 3 chap. 7 p. 110; 1 Esp. 241. In *Mitchell* v. *Oldfield, supra,* it is said that the authority of the court to set off opposite judgments did not depend on the statutes of set off but on the general jurisdiction of the court over the suitors in it; that it was an equitable part of this jurisdiction and had been frequently exercised. The same doctrine is strongly and clearly announced in *Williams* v. *Evans*, 2 McCord, and in 3 Watts, in Tuck. Com's, and in Montague on Set-Off, *supra*. The courts have been gradually extending this equitable remedy. (*Barker* v. *Braham*, *supra*); and opposite demands arising upon judgments may on motion be set off against each other, whenever such set-off is equitable, though the judgments are in different courts, and though all the parties to the different records are not the same. Montague on Law of Set Off, Tucker's Com's, *supra*. Justice Nott, delivering the opinion of the court in *Williams* v. *Evans*, 2 McCord, said: "This is a common law power, and is not derived from the act authorizing parties to set off mutual debts, and as it is an equitable part of its jurisdiction it ought to be so exercised as to do equity, and not sanction fraud, and a person who wishes to have the benefit of it ought to avail himself of the earliest opportunity to make his application, and not delay until the interest of third persons have

become involved. In *Tolbert, executor* v. *Harrison*, O'Neal, Justice, delivering the opinion of the court, said, that the "court is not bound by legal rules to set off judgments in all cases where they are in the same right, that it is an equitable part of their jurisdiction, and ought to be so exercised as to do equity, and not to sanction fraud," that all applications of this kind, as they are founded on no positive statute or any fixed rule which compels the court to grant them, are addressed to the discretion of the court; and in the exercise of this discretion, even when the set-off might be legally made, yet if the court sees that injustice will be done by granting the order of set-off it is uniformly refused.

What we have thus far said applies to, and the cases cited arose in the common law courts.

The subject of set-off is classed by Judge Story as an original source of equity jurisdiction; and chancellor Eldon, in *Stephens ex parte*, 11 Vesey 27, said : " This court" (that is, the court of chancery as a court of equity,) "was in possession of it" (that is, the doctrine of set-off,) "as grounded on principles of equity long before the law interfered." It has been the constant practice of courts of equity to allow equitable set-off against the plaintiff's demands, which could not be made in a court of law, and indeed where the set-off is properly an equitable and not a legal demand, it can ordinarily be successfully made only in a court of equity.   2 Story Eq. Jur. §§ 1431, 1436 ; *Ex parte Blagden*, 19 Vesey 467.   Since the statutes of set-off, of mutual debts and credits, courts of equity have generally followed the course adopted in the construction of the statutes by courts of law, and have applied the doctrine to equitable debts.  As a court of equity has the same control over its decrees and the parties thereto as has a court of law, it would seem upon reason and analogy, that it necessarily possesses authority to set off opposite decrees between the same parties, wherever it will be equitable to do so, and where no injustice will be done by doing so.   We conclude, therefore, that the plaintiff had the right to set off his decree against the judgment and decree of Simpson against him. The defendant Morris obtained his assignment of these claims with full knowledge of the plaintiff's decree against Simpson, and by the assignment he obtained only such rights

as were vested in Simpson, and therefore the plaintiff's right to set-off his decree against these claims in the hands of Morris is not impaired by the assignment. But as the assignment was made in good faith the assignee acquired valuable rights of which the plaintiff cannot deprive him. The plaintiff has two remedies for the collection of his decree, or for nearly the whole of it. The first was the right to obtain satisfaction of the lands of Simpson, so far as the proceeds thereof extend, which we have already shown is sufficient to pay his whole demand except $40.00 or $50.00. This sale was made on the 13th of December, 1881, one month before Simpson obtained his decree against the plaintiff, and before Simpson assigned said claims to Morris, who doubtless took the assignment in view of the fact that the proceeds of the sale decreed to the plaintiff would nearly if not quite pay off his demand. If then the plaintiff should elect to obtain satisfaction of his demand by setting it off against so much of the claims assigned to Morris, the latter would stand · in the situation of a surety for and legally bound to pay the debt of another, which was wholly or in part secured to the creditor by a lien on the debtor's lands, and having paid the debt he will be substituted to all the rights of the creditor, and to the benefit of all securities held by him for the security of the debt. Rawley Morris in this event, would be entitled to receive such part of the proceeds of the sale of Simpson's real estate, as under the decree in that cause is applicable to the plaintiff's decree, and the same being first in order and entitled to be fully paid, before any part of such proceeds can be applied upon the said judgment of Cotts, it follows that it is wholly immaterial whether the plaintiff's demand is paid out of the proceeds of said sale, or whether it be satisfied by setting off the same against the amounts due from him on said judgment and recovered against him by Simpson; for in the latter case the proceeds would be taken by Rawley Morris to the exclusion of Cotts and his assignee. Story Eq. Jur. section 1,237; 2 Tucker's Com. 492, and cases cited; 1 Bart. Chancery Pr. section 4.

But if this set-off be made, Morris would for another reason be entitled to be substituted to the right of the plaintiff to said proceeds. For the plaintiff has in effect two funds to

which he may resort for the satisfaction of his demand, while the plaintiff has but one, that is to say, the liability of the plaintiff upon said judgment and decree; and the doctrine is well settled that where a creditor has two funds, to which he may resort for the satisfaction of his debt, one of which is primarily liable, and the other only secondarily liable for the payment thereof, the person having the right to resort to the latter fund for the payment of his demand stands in the situation of a surety to the owner of the primary fund in the application of the equitable principle of substitution in behalf of sureties, and if the fund secondarily liable be applied by the creditor to the satisfaction of his demand the person who stands in the situation of such surety is entitled to be subrogated to all the rights and remedies held by such creditor for his imdemnity. Story's Eq. Juris. section 633; Bart. Ch'y Pr. section 328; White & Tudor's L. C. in Eq. 149–151; 2 Tuck. Com. 492; *Morrill* v. *Morrill* 53 Vt. 74; Minor's Inst. Vol. 2, 173; *M. Clurg* v. *Beirne*, 10 Leigh. 394; *Kent* v. *Matthews*, 12 Leigh. 273; *Eddy* v. *Traver*, 6 Paige 521; *Hays* v. *Ward*, 4 Johns. Ch'y 130; *Neely* v. *Jones*, 16 W. Va. 625.

From what has been said it is evident that Michael B. Davis is not entitled to the relief asked for in his petition filed in this cause, nor had the circuit court under the proceedings in this cause any authority whatever to order or direct that the proceeds of the sale of Simpson's real estate, made in another cause, in which there has been a final decree, shall be otherwise applied than as therein directed. While the plaintiff in this cause before and on February 4, 1882, when the sale of Simpson's real estate was confirmed, had the right to have satisfaction of his decree against Simpson by having the same set off against the said judgment and decree obtained by Simpson against him, he still has this right to the extent of any portion of his decree which may remain unsatisfied by the proceeds of said sale. Not then having elected to do so, and having in effect elected to accept such proceeds in satisfaction *pro tanto* of his demand, it would now be inequitable to the defendant Rawley Morris, to permit him to do so to any greater extent than that portion of his decree, which may remain unsatisfied, after the proceeds

of such sale shall have been collected and applied as directed by the decree confirming said sale. But as such proceeds may not have been collected, and the exact amount of the plaintiff's decree, which will remain unsatisfied after the same has been collected and applied, cannot now be ascertained, the preliminary injunction awarded the plaintiff in this cause must be continued in force, until the amount of this deficiency can be ascertained and set off against said judgment and decree or either of them, the injunction as to the amount of such deficiency so to be set off as aforesaid shall be made perpetual, and as to the residue of said judgment and decree shall be dissolved.

The decree of the circuit court of Wetzel county rendered herein January 30, 1883, must be reversed with costs to the appellant against the appellees, John H. Nuzum and Michael B. Davis, and the cause remanded to said circuit court to dismiss the petition of said Davis, and to cancel and surrender to said Nuzum the release mentioned in said decree as "Exhibit X." executed by him and dated January 29, 1883, and for further proceedings therein to be had according to the principles settled in this opinion, and according to the rules and principles governing courts of equity.

REVERSED. REMANDED.