359 S.E.2d 124

**MELLON–STUART CO., and Kirby Electric Service, Inc.**

v.

**Cheryle HALL, Clerk of the West Virginia Court of Claims, et al.**

**WEST VIRGINIA BOARD OF REGENTS, an agency of the State of West Virginia**

v.

**MELLON–STUART CO., a Pennsylvania corporation; Kirby Electric Service, Inc., a Pennsylvania corporation.**

**No. 17498.**

Supreme Court of Appeals of West Virginia.

June 18, 1987.

Peter J. Kalis, Pittsburgh, Pa., Ralph C. Dusic, Jr., Charleston, W.Va., for appellant.

Henry C. Bias, Jr. & Ann Ewart, Sp. Asst. Atty. Gen., Charleston, W.Va., for W.Va. Bd. of Regents.

Silas B. Taylor, Deputy Atty. Gen., J. Bradley Russell, Asst. Atty. Gen., for Cheryle Hall.

MILLER, Justice:

These cases have been consolidated for purposes of this opinion. Mellon-Stuart Company and Kirby Electric Service seek an original mandamus against the West Virginia Board of Regents (Board) and present a certified question from the Cir-

cuit Court of Kanawha County. The two proceedings arise out of a construction contract dispute with the Board.

Three questions are presented: (1) whether a contract suit against a State agency is barred by sovereign immunity; (2) whether the clerk of the court of claims is required under W.Va.Code, 14–2–23, to recertify claims which have been approved by that court, but which have been unfunded by the legislature; and (3) whether a decision by the court of claims, adverse to the State, may be given res judicata or collateral estoppel effect in a subsequent proceeding by the State against the prevailing party.

I.

After competitive bidding, Mellon-Stuart was chosen in March, 1979, as general contractor in the construction of a physical education facility at Marshall University in Huntington, West Virginia.[1] Under its agreement with the Board, the project owner, Mellon-Stuart was to receive compensation in the amount of $11,092,000. Kirby was awarded a contract as prime electrical contractor.[2] Mellon-Stuart was additionally charged with the responsibility of coordinating the various prime contractors, including Kirby, who were assigned to the project.

For a variety of reasons, the preparatory work on the project was considerably delayed. Maps provided by the Board allegedly did not properly locate underground storm sewers and pipelines, thereby delaying their relocation. Public streets adjoining the project site were not timely abandoned. A walkoff by one of the prime

contractors early during construction also slowed progress.[3] Water drainage problems impaired the movement of both equipment and laborers for weeks during the excavation phases. A general building trades strike barely one month into the project caused work to remain idle for thirty consecutive days. Further delay was attributable to inclement weather. These problems cumulatively pushed the completion of the facility well beyond the agreed upon schedule and resulted in substantial cost overruns.

After work on the facility was ended, Mellon-Stuart and Kirby instituted a proceeding in the court of claims against the State of West Virginia and the Board in November, 1981. They sought adjustments in their respective contracts and an award of additional compensation totaling $1,000,000. This proceeding was tried intermittently in weekly intervals throughout 1984.

On January 25, 1984, the Board brought a civil action against Mellon-Stuart and Kirby in the Circuit Court of Kanawha County. The Board alleged in its complaint that due to poor workmanship, the concrete floor in the interior of the facility was cracked over its entire length, requiring its removal and replacement. Delays in the project were attributed to fault on the part of Mellon-Stuart, resulting in increased costs to the Board and exposing the Board to future liability. In addition, electrical wiring and piping work performed by Kirby was allegedly not in conformity with the specifications in its contract. The Board sought damages in the amount of $5,500,-

**1.** The construction project was originally placed for competitive bidding in November, 1978. However, all bids received at that time exceeded the amount appropriated by the legislature for the project, apparently by several million dollars. The bids were therefore rejected and, over the next few months, the project was redesigned in several respects to reduce costs. It was again placed for bids in March, 1979. Mellon-Stuart was the low bidder on both occasions.

**2.** As bid in November, 1978, the project was to be overseen by a single prime contractor. Following the redesign of the project, bids were requested for multiple prime contractors. In

addition to Mellon-Stuart and Kirby, other prime contractors included American Desk Manufacturing Company (bleachers), Whitten Corporation (swimming pool), and Hughes-Bechtol (mechanical work). It is argued that many of the problems encountered in the project owe their genesis to this decentralized organizational plan.

**3.** This walkoff resulted in another lawsuit involving the Board in Ohio. *Hughes-Bechtol, Inc. v. West Virginia Bd. of Regents,* 737 F.2d 540 (6th Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984).

000 against Mellon-Stuart and $3,500,000 against Kirby.

The contractors jointly moved to stay the proceedings in the circuit court and to refer the matter to arbitration, in accordance with contract provisions requiring arbitration of disputes. Some two years later, the court acted on this motion, and an order of referral was signed on February 3, 1986.

The court of claims issued its decision on January 24, 1986, and determined that most of the project delays were due to the neglect of the Board. The court awarded Mellon-Stuart the sum of $697,934.33 and Kirby the sum of $107,835.04. Their approved claims were promptly certified by the clerk of the court of claims to the department of finance and administration and included in the proposed budget for fiscal year 1986–87, as provided under W.Va.Code, 14–2–23.[4] The 1986 regular session of the legislature declined to follow the recommendation of the court of claims, and appropriated no money to fund the Mellon-Stuart and Kirby claims.

After the court of claims decision was announced, Mellon-Stuart and Kirby moved to enjoin the arbitration proceedings and to dismiss the civil action brought by the Board on the ground of res judicata. The circuit court denied the motion, holding simply that the court of claims is a "legisla-

tive creature" and "not a judicial entity." By order of September 10, 1986, it certified to this Court the question of whether the doctrines of res judicata and collateral estoppel are applicable to decisions of the court of claims.[5]

Some three months after the denial of their motion in the circuit court, the contractors jointly petitioned this Court for a writ of mandamus seeking, *inter alia* (1) to require the Board to pay the claims out of its budgeted funds for the current fiscal year, or (2) to require the clerk of the court of claims to recertify their approved claims for inclusion in the proposed budget for the next fiscal year.[6] We have consolidated the certified question and the petition for mandamus for our consideration.[7]

## II.

Mellon-Stuart and Kirby urge initially that since their claims have been approved by the court of claims, they are entitled to mandamus relief against the Board compelling it to forthwith pay the claims. Two arguments are advanced to overcome the defense of sovereign immunity. First, the contractors invite us generally to reexamine the breadth of the State's immunity in the light of *Pittsburgh Elevator Co. v. West Virginia Bd. of Regents*, 177 W.Va.

---

**4.** W.Va.Code, 14–2–23, requires the clerk to certify claims approved by the court of claims on or before November 20 of each year. The clerk is given discretionary authority to certify supplementary lists after November 20 to "include subsequent awards made by the court." The governor is required to include all certified claims, including those from supplementary lists, in his proposed budget for the next fiscal year.

**5.** The text of the certified question is as follows:
"Is the January 24, 1986 opinion and award issued by the West Virginia Court of Claims in connection with Claim No. CC–82–14 entitled to res judicata and collateral estoppel effect as between these parties and with respect to those matters actually determined by the Court of Claims as well as every other matter arising from the same transaction that the parties could have presented in the Court of Claims proceeding, Claim No. CC–82–14?"

**6.** In their mandamus petition, Mellon-Stuart and Kirby pray alternatively for a writ to com-

pel the legislature to appropriate monies in payment of their approved claims, and to compel the governor to approve the appropriation. Their right to such relief is predicated primarily upon violation of equal protection and due process principles. We declined to address these constitutionally based claims by refusing to issue a rule to show cause against the governor or the leadership of the legislature. They are subsumed under the constitutional sovereign immunity claim.

**7.** On January 7, 1987, the parties against whom show cause orders had been issued removed the mandamus proceeding to the United States District Court for the Southern District of West Virginia under 28 U.S.C. § 1441. An order entered by the district court on February 3, 1987, granted a motion to remand based upon the "Pullman" abstention doctrine. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

539, 310 S.E.2d 675 (1983). Second, they contend more narrowly that sovereign immunity must yield where a State agency purposely engages in a commercial venture. We are not persuaded by either argument.

■ The State's immunity from suit is derived from the provisions of Article VI, Section 35 of the West Virginia Constitution:

> "The State of West Virginia shall never be made a defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee."

This constitutional grant of immunity is absolute and, as we have consistently held, cannot be waived by the legislature or any other instrumentality of the State. *E.g.,* *Ohio Valley Contractors v. Board of Educ.,* 170 W.Va. 240, 293 S.E.2d 437 (1982); *City of Morgantown v. Ducker,* 153 W.Va. 121, 168 S.E.2d 298 (1969); *State ex rel. Scott v. Taylor,* 152 W.Va. 151, 160 S.E.2d 146 (1968); *Petros v. Kellas,* 146 W.Va. 619, 122 S.E.2d 177 (1961).

Broadly stated, the policy which underlies sovereign immunity is to prevent the diversion of State monies from legislatively appropriated purposes. *Kerns v. Bucklew,* 178 W.Va. 68, 357 S.E.2d 750 (1987). Thus, where monetary relief is sought against the State treasury for which a proper legislative appropriation has not been made, sovereign immunity raises a bar to suit.[8] *E.g., Ables v. Mooney,* 164 W.Va. 19, 264 S.E.2d 424 (1979); *Hamill v. Koontz,* 134 W.Va. 439, 59 S.E.2d 879 (1950). This immunity from suit is extended to the Board as an agency funded by the State. *City of Morgantown v. Ducker, supra.*

Mellon-Stuart and Kirby rely upon *Pittsburgh Elevator* as authority for abolishing sovereign immunity or, at a minimum, tempering such immunity where the State is a party to a commercial agreement. This reading cannot be supported by *Pittsburgh Elevator,* which involved a tort action against a State agency that had purchased liability insurance. Our central holding in *Pittsburgh Elevator* was that an action putatively against a State agency, which seeks recovery only from the agency's liability insurance, is not barred by sovereign immunity. We summarized this principle in Syllabus Point 2: "Suits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State." Our holding was consistent with the policy underlying sovereign immunity, since the availability of insurance proceeds assures that any damages recovered would not be paid out of State coffers.

■ Earlier this year, we specifically reaffirmed the State's immunity in a contract suit brought by a commercial entity. In *G.M. McCrossin, Inc. v. West Virginia Bd. of Regents,* 177 W.Va. 539, 355 S.E.2d 32 (1987), a Pennsylvania corporation presented a bid to the Board for the construction of an athletic facility at West Virginia University. As a result of a clerical error, its bid was approximately $150,000 under its actual cost. A claim by McCrossin for an equitable adjustment of its contract was denied by the court of claims. McCrossin then brought a civil action against the Board in circuit court, which dismissed the action on the basis of sovereign immunity. We affirmed and held in Syllabus Point 2:

> "A knowledgeable party contracting with a state agency has, in effect, agreed to submit any disputes with the contract-

---

8. That the legislature alone is empowered to appropriate State funds is a principle which likewise has constitutional roots. Article X, Section 3 of the West Virginia Constitution provides, in part: "No money shall be drawn from the treasury *but in pursuance of an appropria-* *tion made by law,* and on a warrant issued thereon by the auditor; *nor shall any money or fund be taken for any purpose than that for which it has been or may be appropriated, or provided."* (Emphasis added).

ing state agency for resolution by the court of claims."

This case is controlled by *McCrossin*. It cannot be doubted that both Mellon-Stuart and Kirby are seasoned and sophisticated business entities, which may properly be charged with knowledge of the doctrine of sovereign immunity and of the court of claims as their sole forum for relief. Accordingly, they cannot overcome that immunity and attempt to recover damages against the State by means of a civil action, extraordinary writ, or any other legal or equitable remedy. Their sole and exclusive remedy is an adjudication of their claims before the court of claims.

### III.

It is recognized that W.Va.Code, 14–2–23, imposes upon the clerk of the court of claims a nondiscretionary duty to certify approved claims each year for inclusion in the budget. *Russell Transfer, Inc. v. Moore*, 158 W.Va. 534, 212 S.E.2d 433 (1975). Mellon-Stuart and Kirby contend that this duty extends to require the clerk to recertify claims previously approved by the court, but upon which the legislature has not acted to provide funding. We agree.

W.Va.Code, 14–2–23, provides:

"The clerk shall certify to the department of finance and administration, on or before the twentieth day of November of each year, a list of all awards recommended by the court to the legislature for appropriation. The clerk may certify supplementary lists to the governor to include subsequent awards made by the court. The governor shall include all awards so certified in his proposed budget bill transmitted to the legislature."

We extensively examined this provision in *Russell Transfer, Inc. v. Moore, supra,* which involved a common carrier whose State contract to transport and warehouse alcoholic beverages was unilaterally terminated. Russell Transfer initiated proceedings before the court of claims, which approved an award of $44,825.17. Its award

was certified by the clerk of the court of claims and included in the governor's proposed budget bill. The legislature appropriated funds in payment of the claim, but the appropriation was subsequently vetoed. Russell Transfer then petitioned for a writ to compel the governor to include the claim in his proposed budget bill for the next fiscal year. This Court denied the writ because the claim had not been timely certified. However, in discussing the nature of the clerk's duty to recertify the claim, we observed that it was "still alive" and "should be recertified ... *for the succeeding regular sessions of the Legislature.*" 158 W.Va. at 540–41, 212 S.E.2d at 437. (Emphasis added).

■ We believe that W.Va.Code, 14–2–23, as interpreted by *Russell Transfer,* mandates recertification of claims approved by the court of claims which remain unfunded by the legislature.[9] A certification by the clerk is required to be submitted "each year," which provides "a list of all awards recommended by the court to the legislature for appropriation." We observe that this language is not limited, expressly or impliedly, to awards which are rendered by the court only in the previous year.

■ Our decision in *Russell Transfer* clearly contemplates a duty to recertify claims beyond the year in which they are approved, so long as there has been no express legislative rejection of the claims. We perceive no reason to retreat from that holding. We thus conclude that W.Va. Code, 14–2–23, imposes upon the clerk of the court of claims a nondiscretionary duty to recertify to the department of finance and administration claims which are approved by the court, and upon which the legislature has taken no action.

■ Having determined that W.Va.Code, 14–2–23, requires the clerk to recertify approved but unfunded claims, we next consider whether mandamus will lie to compel compliance with this requirement. Our rule regarding the issuance of a writ of

---

**9.** If the legislature in its bill approving court of claims awards should specifically reject an award, then this legislative action would preclude further recertification.

mandamus is explained in Syllabus Point 2 of *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969):

"A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of the respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy."

*See also Berry v. Boone County Ambulance Authority,* 176 W.Va. 43, 341 S.E.2d 418 (1986); *State ex rel. Ruddlesden v. Roberts,* 175 W.Va. 161, 332 S.E.2d 122 (1985); *Oakley v. Gainer,* 175 W.Va. 115, 331 S.E.2d 846 (1985).

We conclude that mandamus is a proper remedy in this case. As discussed, the duty of the clerk to recertify approved claims is mandatory, Mellon-Stuart and Kirby have a clear legal right to the enforcement of such duty, and no other comparable remedy is available. For these reasons, we grant a writ of mandamus directing the clerk of the court of claims to recertify the approved claims of Mellon-Stuart and Kirby pursuant to W.Va.Code, 14–2–23.

## IV.

We now address the question certified to this Court by the Circuit Court of Kanawha County, which we may summarize as follows: Whether a decision rendered by the court of claims on a claim properly before it, which is adverse to the State, will preclude relitigation in subsequent court proceedings of issues decided therein? The circuit court answered this question in the negative, relying upon *State ex rel. Stollings v. Gainer,* 153 W.Va. 484, 170 S.E.2d 817 (1969), and *Russell Transfer, Inc. v. Moore, supra.* It concluded that the court of claims is not a "court," but rather a "legislative creature," to which the doc-

trines of res judicata and collateral estoppel would be inapplicable. We disagree.

## A.

Very broadly, res judicata[10] is a doctrine which bars the subsequent litigation of any cause of action which has been previously tried on the merits by a court of competent jurisdiction, and includes within its bar issues which might have been tried. This rule was expressed in Syllabus Point 1 of *In Re Estate of McIntosh,* 144 W.Va. 583, 109 S.E.2d 153 (1959):

" 'An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata.*' Point 1, Syllabus, *Sayre's Adm'r v. Harpold et al.,* 33 W.Va. 553 [11 S.E. 16 (1890) ]."

We have recognized that res judicata serves to advance several related policy goals—(1) to promote fairness by preventing vexatious litigation; (2) to conserve judicial resources; (3) to prevent inconsistent decisions; and (4) to promote finality by bringing litigation to an end. *E.g., Pitsenbarger v. Gainer,* 175 W.Va. 31, 330 S.E.2d 840 (1985); *Conley v. Spillers,* 171 W.Va. 584, 301 S.E.2d 216 (1983).

Collateral estoppel[11] is a related doctrine, which applies to issues that were

---

**10.** The Restatement (Second) of Judgments separates res judicata into two constituent doctrines—merger and bar. Merger applies to a judgment rendered in favor of a plaintiff, and provides that the cause of action sued upon is extinguished and replaced by those rights attendant to the judgment. Restatement (Second) of Judgments § 18 (1982). The rule of bar lends protection to defendants, and provides

that a valid defense judgment bars any further action by the plaintiff on the same claim. Restatement (Second) of Judgments § 19 (1982). Res judicata is sometimes referred to generally as "claim preclusion."

**11.** The Restatement categorizes estoppel as either "direct" or "collateral." If a second action on a given claim is permitted, as in cases of nuisance or continuous trespass, the estoppel

actually litigated in an earlier suit even though the causes of action are different. Res judicata focuses on whether the cause of action in the second suit is the same as in the first suit. The central inquiry on collateral estoppel is whether a given issue has been actually litigated by the parties in the earlier suit. We discussed these principles at length in *Conley* and summarized the doctrine of collateral estoppel in Syllabus Point 2:

"Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit. We have made this summary of the doctrine of collateral estoppel:

'But where the causes of action are not the same, the parties being identical or in privity, the bar extends to only those matters which were actually litigated in the former proceeding, as distinguished from those matters that might or could have been litigated therein, and arises by way of estoppel rather than by way of strict *res judicata*.' *Lane v. Williams*, 150 W.Va. 96, 100, 144 S.E.2d 234, 236 (1965)."

We also commented in *Conley* that collateral estoppel is supported by the same public policy considerations as res judicata. 171 W.Va. at 588, 301 S.E.2d at 220.

### B.

The principal argument against applying the doctrines of res judicata and collateral estoppel to decisions of the court of claims is that it is not, technically speaking, a "court." We are directed to the following language in *State ex rel. Stollings v. Gainer*, 153 W.Va. at 491, 170 S.E.2d at 822:

"The Court of Claims is advisory and recommendatory in character to both the legislature and State agencies where, as here, an appropriation has not been made in advance of the Court's action. Its

function in that manner is not judicial. It is created by the legislature with one of its purposes that of conducting investigations in aid of legislative actions for obtaining information necessary to enable the legislature to discharge its functions and to exercise its power of legislation. The legislature may accept or reject its findings, or approve or disapprove its recommendations."

This language correctly describes the limited jurisdiction of the court of claims. It cannot render a monetary judgment against the State, as this is the province of the legislature alone. However, the real question is whether it functions in a judicial fashion such that it is fair and proper to give its decisions preclusive effect in subsequent litigation between the parties.

Historically, there was some hesitation by courts to give deference to prior determinations by nonjudicial bodies. However, there has been a growing trend toward utilizing res judicata as evidenced by *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642, 661 (1966), where it was observed: "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose."

We have given some acknowledgment to this principle in the context of arbitration by stating that "all causes of action arising under the contract which by the contract terms are made arbitrable are merged, in the absence of fraud, into the award of the arbitrators." Syllabus Point 1, in part, *Board of Educ. v. W. Harley Miller, Inc.*, 160 W.Va. 473, 236 S.E.2d 439 (1977). Similarly, in *Carter v. City of Bluefield*, 132 W.Va. 881, 900, 54 S.E.2d 747, 758 (1949), we appeared to recognize the principle of administrative res judicata, but found it to be inapplicable in that case.

which is applied is referred to as "direct." Where, more commonly, estoppel is asserted in a subsequent action for other relief, it is indirect or "collateral." Restatement (Second) of Judg-

ments § 27, comment b (1982). Both categories of estoppel are discussed in the Restatement under the heading of "issue preclusion."

■ Generally, authorities require an assessment of three factors in determining whether res judicata and collateral estoppel may be applied to a hearing body: (1) whether the body acts in a judicial capacity; (2) whether the parties were afforded a full and fair opportunity to litigate the matters in dispute; and (3) whether applying the doctrines is consistent with the express or implied policy in the legislation which created the body. *See generally, McCulty v. Rockefeller,* 570 F.Supp. 1455 (S.D.W.Va. 1983) (administrative agency); *People v. Sims,* 32 Cal.3d 468, 651 P.2d 321, 186 Cal.Rptr. 77 (1982) (administrative agency); *Clemens v. Apple,* 65 N.Y.2d 746, 481 N.E.2d 560, 492 N.Y.S.2d 20 (1985) (arbitration); *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 467 N.E.2d 487, 478 N.Y.S.2d 823 (1984) (administrative agency); *Superior's Brand Meats, Inc. v. Lindley,* 62 Ohio St.2d 133, 16 Ohio Op.3d 150, 403 N.E.2d 996 (1980) (administrative agency); Restatement (Second) of Judgments § 83 (1982); K. Davis, Administrative Law § 21:1 (2d ed. 1983); 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4475 (1981); 2 Am.Jur.2d *Administrative Law* § 496 (1962).

### C.

■ With these factors as a guide, we are led to the conclusion that res judicata or collateral estoppel effect may properly be given to decisions of the court of claims. Though the court of claims is not a judicial body, it clearly operates in a judicial capacity. Its judges are lawyers, who serve as neutral and detached decision-makers. Longstanding due process protections such as notice and an opportunity to be heard are scrupulously applied. The court has adopted the West Virginia Rules of Civil Procedure where they are not inconsistent with its own procedures.[12] Moreover, the judges make legal and factual findings from which they render a final and binding decision. Thus, the question of whether the court acts as a judicial body must be answered in the affirmative.

The second inquiry is whether the parties were afforded a full and fair opportunity to litigate their dispute. We note that the hearings conducted before the court of claims possessed all of the indicia of an adversarial judicial proceeding. The State and both of the claimants were represented by counsel. The parties had available to them various methods of pretrial discovery, including interrogatories and depositions. Rule 14, Ct. of Cl.R.Prac. & Pro. They were authorized to produce witnesses and exhibits on their behalf, to procure evidence through compulsory process, and to cross-examine the witnesses of opposing parties. Rule 13, Ct. of Cl.R.Prac. & Pro.; W.Va.Code, 14-2-22. There is no claim made by any of the parties that they did not have a full and fair opportunity to develop their respective positions.

As to the third factor, we believe that applying res judicata and collateral estoppel principles to decisions of the court of claims is in harmony with the policies sought to be promoted by the legislature in creating the court. The act establishing the court provides for a specialized forum, akin to a court, which is empowered to formally and conclusively adjudicate claims against the sovereign. Significantly, the act provides that a decision rendered by the court against a claimant bars further proceedings by him upon the same claim. W.Va.Code, 14-2-27. We see no logical reason why such conclusiveness should not apply to the State as well.

Furthermore, other states have given res judicata effect to the decisions of special judicial or quasijudicial bodies created for the express purpose of adjudicating claims against the state. *See, e.g., Rooney v. Tufano Contracting Corp.,* 43 Misc.2d 358, 251 N.Y.S.2d 392 (Sup.Ct.1964); *McCrory v. Children's Hosp.,* 28 Ohio App.3d 49, 501 N.E.2d 1238 (1986); *Fourakre v. Perry,* 667 S.W.2d 483 (Tenn.App. 1983). Thus, we conclude that res judicata or collateral estoppel effect may be given to matters litigated in the court of claims.

**12.** Rule 17 of the Rules of Practice and Procedure of the Court of Claims provides: "The Rules of Civil Procedure will apply in the court of claims unless the Rules of Practice and Procedure of the court of claims are to the contrary."

■ We also recognize that by granting the contractors a res judicata right to their judgment in the court of claims, they may assert the amount of that judgment as a credit in the present action in the circuit court. This action is not inconsistent with our prior case law which has recognized that constitutional sovereign immunity does not foreclose a counterclaim against the State. In Syllabus Point 2 of *State v. Ruthbell Coal Co.*, 133 W.Va. 319, 56 S.E.2d 549 (1949), we determined that a defendant sued by the State could assert a counterclaim against the State on a matter growing out of the same transaction:

> "Where the State or a direct governmental agency thereof institutes an action at law or a notice of motion for judgment proceeding against a citizen, Article VI, Section 35, of the West Virginia Constitution, furnishes no defense to a counterclaim growing out of the same transaction as the claim pleaded."

Later, in *State Road Comm'n v. Ball*, 138 W.Va. 349, 76 S.E.2d 55 (1953), we held that the counterclaim could not exceed the amount that the State recovered, as indicated in Syllabus Point 1:

> "In a tort action instituted by The State Road Commission of West Virginia, the defendant impleaded therein cannot recover by way of counterclaim unliquidated damages in excess of the amount charged in the plaintiff's declaration. Such counterclaim constitutes an action against the State in contravention of the prohibitory provision contained in Section 35, Article VI, West Virginia Constitution, that 'The State of West Virginia shall never be made defendant in any court of law or equity, * * *.' "

Essentially, what we are permitting is a right of setoff in the amount of the judgment obtained in the court of claims, but only to the extent that it does not exceed the amount recovered by the State in its civil action against the contractors.

It is well-settled in this State that where one party obtains a judgment against another, the judgment debtor may obtain a setoff in the amount of a valid and unsatisfied judgment he holds against the judgment creditor. Over one hundred years ago, we held in Syllabus Point 1 of *Nuzum v. Morris*, 25 W.Va. 559 (1885):

> "Opposite demands arising out of judgments or decrees between the same parties in the same right may be set off against each other, whenever it is equitable to do so; but the application for this relief should not be delayed, until the interests of third parties have become involved."

*See also Sitzes v. Anchor Motor Freight, Inc.*, 169 W.Va. 698, 289 S.E.2d 679 (1982); *Payne v. Webb*, 29 W.Va. 627, 2 S.E. 330 (1887). The doctrine is equitable in origin, and the right of a party to obtain a setoff is usually addressed to the sound discretion of the trial court. *Nuzum v. Morris*, 25 W.Va. at 566-67.

■ Generally, where a party holds against his judgment creditor a final judgment which is subsisting and unsatisfied, it may properly be utilized as a setoff. 47 Am.Jur.2d *Judgments* § 1005 (1969). *See also Great American Ins. Co. v. Fred J. Gallagher Constr. Co.*, 16 Ariz.App. 479, 494 P.2d 379 (1972); *Firmin v. Miller*, 355 So.2d 977 (La.App.1977); *Payne v. Payne*, 695 S.W.2d 494 (Mo.App.1985). This rule promotes fairness and economy of administration by allowing a setoff only where claims have been properly adjudicated and liquidated to a sum certain. *Faulconer v. Stinson*, 44 W.Va. 546, 29 S.E. 1011 (1898).

### D.

While we have held that the doctrines of res judicata and collateral estoppel may be applied to court of claims judgments, this does not imply that the State is foreclosed from pursuing its claim for damages in the circuit court. We reject the argument of Mellon-Stuart and Kirby that the Board should have asserted its damage claim in the court of claims, and that its failure to do so bars its civil action under the compulsory counterclaim rule in Rule 13(a) of the West Virginia Rules of Civil Procedure.[13]

---

13. Rule 13(a), W.Va.R.C.P., states:

"*Compulsory counterclaims.*—A pleading

shall state as a counterclaim any claim which

In *Carper v. Kanawha Banking & Trust Co.*, 157 W.Va. 477, 515, 207 S.E.2d 897, 920 (1974), we stated the principle that the "[f]ailure to assert a compulsory counterclaim is a waiver and abandonment of such claim and an adverse decision to the putative claimant is *res judicata.*" [14] The question we must address here is whether the court of claims is subject to Rule 13(a) of the Rules of Civil Procedure.

■ The adoption by the court of claims of the Rules of Civil Procedure does not mean that these rules can supersede statutory provisions governing the court. Though the court of claims acts in an adjudicatory role when it hears and decides cases, it is not an Article VIII court under the West Virginia Constitution, but rather was created by the legislature. Consequently, it has no inherent powers and is like other administrative agencies in the sense that it may not adopt rules which are inconsistent with or alter its statutory authority, as we stated in Syllabus Point 3 of *Rowe v. West Virginia Dept. of Corrections*, 170 W.Va. 230, 292 S.E.2d 650 (1982):

> "It is fundamental law that the Legislature may delegate to an administrative agency the power to make rules and regulations to implement the statute under which the agency functions. In exercising that power, however, an administrative agency may not issue a regulation which is inconsistent with, or which alters or limits its statutory authority."

*See also* Syllabus Point 3, *Ney v. State Workmen's Compensation Comm'r*, 171 W.Va. 13, 297 S.E.2d 212 (1982).

■ When we examine the statute creating the court of claims, there is in W.Va. Code, 14–2–13(2), a provision which permits the court of claims to hear matters "which may be asserted in the nature of setoff or counterclaim on the part of the State or any state agency." [15] We have stated that in the absence of any contrary legislative intent, "the word 'may' in a statute ... indicates discretion." *Hodge v. Ginsberg*, 172 W.Va. 17, 22, 303 S.E.2d 245, 250 (1983). (Citations omitted). We see nothing in the court of claims statute to suggest that the legislature intended to require the State or its agencies to assert counterclaims. We accordingly deem the use of the word "may" to mean that a counterclaim is permissive rather than compulsory.

Furthermore, there is a practical reason why we believe the legislature did not intend to apply the compulsory counterclaim rule to the State or its agencies. There

---

at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13."

**14.** It appears that most courts having a mandatory counterclaim rule conclude that the failure to assert it results in it being barred under a res judicata, estoppel, or waiver theory. *E.g., Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631 (3d Cir.1961); *Dragor Shipping Corp. v. Union Tank Car Co.,* 378 F.2d 241 (9th Cir.1967); *Illinois Central Gulf R.R. Co. v. Golden Triangle*

*Wholesale Gas Co.,* 586 F.2d 588 (5th Cir.1978); *Bailey v. Hawaii,* 57 Haw. 144, 552 P.2d 365 (1976); *House v. Hanson,* 245 Minn. 466, 72 N.W.2d 874 (1955); *see generally* 6 C. Wright & A. Miller, Federal Practice & Procedure § 1417 (1971).

**15.** The complete text of W.Va.Code, 14–2–13, is:
"The jurisdiction of the court, except for the claims excluded by section fourteen [§ 14–2–14], shall extend to the following matters:
"1. Claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the State or any of its agencies, which the State as a sovereign commonwealth should in equity and good conscience discharge and pay.
"2. Claims and demands, liquidated and unliquidated, ex contractu and ex delicto, which may be asserted in the nature of setoff or counterclaim on the part of the State or any state agency.
"3. The legal or equitable status, or both, of any claim referred to the court by the head of a state agency for an advisory determination."

appears to be no mechanism for the State to obtain a monetary judgment and collect it in the court of claims in the event its counterclaim or setoff exceeded the amount of the original claim. We, therefore, conclude that the grant of jurisdiction for the State to bring a counterclaim in the court of claims under W.Va.Code, 14–2–13, is permissive, rather than compulsory.

It is generally recognized that where a counterclaim is not compulsory, then the failure to assert it does not bar a later action. *American Triticale, Inc. v. Nytco Servs., Inc.*, 664 F.2d 1136 (9th Cir. 1981); *Republic Health Corp. v. Lifemark Hospitals of Florida, Inc.*, 755 F.2d 1453 (11th Cir.1985); *see generally* 6 C. Wright & A. Miller, Federal Practice & Procedure § 1420 (1971). For this reason, we hold that the State is not precluded by res judicata from bringing its suit in the circuit court.[16]

### V.

For the reasons discussed above, we grant a writ of mandamus directing the clerk of the court of claims to recertify to the director of finance and administration the approved claims of Mellon-Stuart and Kirby, as required under W.Va.Code, 14–2–23. The question certified to this Court by the Circuit Court of Kanawha County is answered and dismissed from the docket.

Writ granted; certified question answered and dismissed.

---

16. Though res judicata does not bar the Board's civil action, it is apparent that there is a substantial overlap of issues in the circuit court and court of claims proceedings. This is demonstrated by a comparison of the allegations in the notice of claim filed by the contractors in the court of claims and the complaint filed in the circuit court by the Board.

Mellon-Stuart and Kirby relied in the court of claims principally upon the following factors in support of their contract claims: (1) denial of timely access to the project site due to improper maps and plans; (2) conditions at the project site at variance with the contracts and plans; (3) inadequacy of the plans; and (4) refusal by the Board to properly coordinate work among the prime contractors.

The Board, in its complaint against the contractors in the circuit court, predicated relief upon the following acts and omissions by Mellon-Stuart and Kirby: (1) delay due to failure to timely commence work on the project; (2) delay due to failure to cooperate with other prime contractors; (3) failure to remove and relocate underground facilities in a timely manner; (4) failure to abide by the proposed work schedule; · (5) use of materials which did not comply with the plans and specifications; and (6) delay due to improper water drainage.

We are seriously handicapped by the absence of any transcripts of testimony before the court of claims or the exhibits introduced therein so as to determine how much the overlap should preclude the State from relitigating issues disposed of in the court of claims. It will be necessary for the circuit court to determine what issues are precluded by the prior court of claims proceeding, and to revise its order of referral accordingly.