433 S.E.2d 49

**Lila Pearl JONES, Plaintiff
Below, Appellee,**

v.

**GLENVILLE STATE COLLEGE, a State
Education Facility, Defendant
Below, Appellant.**

**No. 21416.**

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 20, 1993.

Decided June 11, 1993.

Paul M. Cowgill, West Union, for appellee.

Stephen M. Fowler, Cleek, Pullin & Bibb, Charleston, for appellant.

Kathleen Mansheim, Asst. Atty. Gen., Charleston, for amicus curiae.

WORKMAN, Chief Justice:

■ This case is before the Court upon a May 26, 1992, order of the Circuit Court of Gilmer County which certified three questions to this Court.[1] The lower court implicitly answered certified questions numbered one and two in the negative and certified question numbered three in the affirmative when it denied the Appellant's, Glenville State College, motion for summary judgment. We decline to address the certified questions as formulated since they are largely redundant.[2] The question

---

1. The original certified questions were as follows:

1. Does the investigation, hearing and decision-making process at the West Virginia Human Rights Commission comply with minimum levels of due process, such that any subsequent attempt to pursue the same claims in another forum would be barred by the doctrine of res judicata[?]

2. Does a finding of 'no probable cause' by the West Virginia Human Rights Commission on a claimant's human rights complaint pre-

clude subsequent litigation in a circuit court alleging the same claim of discrimination?

3. When the Human Rights Commission enters a finding of no probable cause on the merits of a claimant's claim of age discrimination, and subsequently issues a notice of right to sue letter; does the claimant in fact have a right to sue having already received a determination on the merits of her age discrimination claim?

2. Upon receiving certified questions, we retain some flexibility in how the questions will be

which must be addressed is whether a "no probable cause" determination made by the West Virginia Human Rights Commission (hereinafter referred to as HRC) is an adjudication on the merits of a discrimination complaint which precludes the HRC from issuing a "notice of right to sue" letter and the plaintiff from bringing a subsequent action in circuit court which pleads the same allegations of discrimination due to the doctrine of res judicata. Upon review of the arguments of the parties [3] and all the matters of record submitted before the Court, we conclude that the HRC's determination of no probable cause is not an adjudication on the merits.

## I.

The Appellee, Lila Pearl Jones, was employed as a secretary for the education division at Glenville State College on August 25, 1975. The Appellee worked in the education division until she was transferred to a similar secretarial position within the social sciences division on December 31, 1983.

In an evaluation letter dated March 29, 1984, the Appellee was given an unsatisfactory job evaluation by her supervisor, Delores Mysliwiec, who was the acting chairperson of the social sciences division. That letter indicated that the Appellee was to show improvement concerning the unacceptable job performance areas within a month. Ms. Mysliwiec further stated in the letter that "[i]f I were asked as division chairperson for a recommendation at this time, I could not recommend continuing employment without significant improvement."

By letter dated June 11, 1984, the Appellee responded to the negative evaluation. In that letter the Appellee outlined her education, skills and experience. She also indicated that no one had ever personally addressed. *See Buckhannon–Upshur County Airport Auth. v. R & R Coal Contracting, Inc.,* 186 W.Va. 583, 589, 413 S.E.2d 404, 406 n. 2 (1991); *City of Fairmont v. Retail, Wholesale, and Dep't Store Union, AFL–CIO,* 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590–91 (1980).

confronted her about her poor job performance prior to the March 29, 1984, evaluation.

The Appellee was terminated from her employment at Glenville State College on July 31, 1984. She utilized the administrative remedies within the West Virginia Board of Regency procedures by filing a grievance with the Appellant. The Appellant, however, found that her rights had not been violated. Consequently, on October 3, 1984, after exhausting those in-house administrative remedies, the Appellee filed a complaint with the HRC alleging age discrimination.

The HRC apparently misplaced the Appellee's file and some five years later, by letter dated February 17, 1989, the HRC inquired as to whether the Appellee still desired to pursue the claim. The Appellee responded affirmatively and in October 1989, the Appellee was informed by the HRC that an investigator had been assigned to her case and she was instructed to prepare herself and her witnesses for interviews.

The Appellee was not contacted again by the HRC until a determination letter dated August 27, 1990, was sent to her and informed her that the HRC found no probable cause for the allegations. The letter further indicated that the case against the Appellant should be dismissed. The Appellee was given ten days to appeal the determination with the HRC. The Appellee was visiting her children and did not receive this determination letter until October 27, 1990. She made no effort to appeal the "no probable cause" determination within ten days after she received the letter.

The Appellee next received a "notice of right to sue" letter dated October 25, 1990. At this juncture, she contacted an attorney who attempted to reopen the matter with the HRC to no avail. On January 29,

**3.** An amicus curiae brief was submitted by the HRC and considered by this Court in reaching this decision.

1991,[4] the Appellee filed a complaint in the Circuit Court of Gilmer County alleging age discrimination. It is the filing of this complaint which prompted the certified questions at issue.

## II.

It is helpful to examine the procedures utilized by the HRC when a probable cause/no probable cause determination is made. These procedures are set forth in West Virginia Code § 5–11–10 (1990)[5] and Title 77 of the Code of State Regulations. *See* 6 W.Va.C.S.R. 77–2–4 to –4.8. Once a complaint is filed with the HRC, an investigation by the HRC into the allegations contained in the complaint is commenced. During this investigatory stage, the HRC assigns an investigator to the case who may conduct interviews, order production of documents and completion of interrogatories. *See* W.Va.Code § 5–11–10; 6 W.Va. C.S.R. § 77–2–4.2.

At the close of this investigation, the investigator makes a recommendation as to whether probable cause exists to substantiate the allegations found in the complaint. If it is determined that probable cause exists, then a probable cause determination letter is sent to the parties, and if conciliation is unsuccessful, the case is set for hearing. *See* 6 W.Va.C.S.R. §§ 77–2–4.5 to –4.6.

■ The public hearing which occurs before an administrative law judge of the HRC is essentially a trial without a jury. The West Virginia Rules of Evidence apply, witnesses testify under oath and a court reporter is present. *See* 6 W.Va.C.S.R. §§ 77–2–7.1 to –8.1. At the conclusion of

---

**4.** By order dated July 26, 1991, the circuit court denied the Appellant's Motion to Dismiss the Appellee's complaint pursuant to a violation of the 90–day statute of limitations provided for in the "notice of right to sue" letter. The court found that the Appellee filed her complaint on January 5, 1991, within the 90–day period. Because this finding is not a subject of the certified questions presented, we do not address its correctness.

**5.** West Virginia Code § 5–11–10 provides, in pertinent part:

Any individual claiming to be aggrieved by an alleged unlawful discriminatory practice shall ... file with the commission a verified complaint.... Any complaint filed pursuant to this article must be filed within one hundred eighty days after the alleged act of discrimination.

After the filing of any complaint, or whenever there is reason to believe that an unlawful discriminatory practice has been committed, the commission shall make a prompt investigation in connection therewith.

If it shall be determined after such investigation that no probable cause exists for substantiating the allegations of the complaint, the commission shall, within ten days from such determination, cause to be issued and served upon the complainant written notice of such determination, and the said complainant or his attorney may, within ten days after such service, file with the commission a written request for a meeting with the commission to show probable cause for substantiating the allegations of the complaint. If it shall be determined after such investigation or meeting that probable cause exists for substantiating the allegations of the complaint, the commission shall immediately endeavor to eliminate the unlawful discriminatory practices complained of by conference, conciliation and persuasion....

In case of failure so to eliminate such practice or in advance thereof, if in the judgment of the commission circumstances so warrant, the commission shall cause to be issued and served a written notice, together with a copy of such complaint ... [on the respondent] named in such complaint, ... to answer the charges of such complaint at a hearing before the commission....

The case in support of the complaint shall be presented before the commission by one of its attorneys or agents....

If, after such hearing and consideration of all of the testimony, evidence and record in the case, the commission shall find that a respondent has engaged in or is engaging in any unlawful discriminatory practice ..., the commission shall issue and cause to be served on such respondent an order to cease and desist from such unlawful discriminatory practice and to take such affirmative action [as suggested within this provision].... Such order shall be accompanied by findings of fact and conclusions of law....

If, after such hearing and consideration of all of the testimony, evidence and record in the case, the commission shall find that a respondent has not engaged in such unlawful discriminatory practice, the commission shall state its findings of fact and conclusions of law as aforesaid and shall issue and cause to be served on the complainant an order dismissing the said complaint as to such respondent.

the hearing, the administrative law judge renders a final decision containing findings of fact and conclusions of law on the merits of the case. *See* 6 W.Va.C.S.R. § 77–2–9. This decision may be appealed to the HRC. Moreover, except in limited cases, appeals from the final orders of the HRC may be brought before this Court. *See* W.Va.Code § 5–11–11 (1990).[6]

In contrast to a probable cause determination, when the investigator makes a recommendation that no probable cause supports the allegations in the complaint, a determination letter to that effect is also sent to the parties. *See* 6 W.Va.C.S.R. 77–2–4.10. This determination letter explains the procedure to request an administrative review of the "no probable cause" determination.

If an administrative review of the "no probable cause" determination occurs, the HRC reviews the investigator's recommendation along with any new information submitted by the parties and the initial "no probable cause" determination is either affirmed, reversed and set for hearing, or remanded within the HRC for further investigation. *See* 6 W.Va.C.S.R. § 77–2–4.8(b).

Regardless of whether the investigatory stage ends in a probable cause or "no probable cause" determination, the plaintiff is issued a "notice of right to sue" letter by the HRC which notifies him of his right to file a complaint in circuit court. *See* W.Va. Code § 5–11–13(b) (1990).

### III.

### PROBABLE CAUSE DETERMINATION

The issue before this Court is whether a "no probable cause" determination constitutes an adjudication on the merits of a discrimination claim before the HRC. The Appellant asserts that a "no probable cause" determination by the HRC is an adjudication based upon the merits[7] of each case and therefore any subsequent litigation in circuit court is prohibited by the doctrine of res judicata. Further, the Appellant maintains that the HRC's issuance of a "notice of right to sue" letter is of no effect where the HRC has previously issued a "no probable cause" determination since that determination constitutes a final decision on the merits of the case. The Appellee, however, asserts that the doctrine of res judicata only applies if a public hearing occurs within the HRC's procedures because until this hearing takes place there is no adjudication or final determination on the merits of the case. Therefore, a "notice of right to sue" letter is of no force and effect only if it is issued after this adjudication. In the present case, the Appellee argues that no adjudication took place since the "no probable cause" determination was made without the benefit of a hearing and the Appellee properly brought suit in circuit court pursuant to the "notice of right to sue" letter.

The Appellant relies heavily upon the decision of the United States District Court for the Southern District of West Virginia in *Gray v. Avashia*, 637 F.Supp. 960 (S.D.W.Va.1986), to support the contentions raised. In *Gray*, the plaintiff filed claims with the HRC alleging race, sex, reprisal and handicap discrimination after being discharged from Union Carbide. *Id.* at 961. Subsequent to investigating the complaint, the HRC issued a "no probable cause" determination. *Id.* The plaintiff requested

---

**6.** It is undisputed that the HRC's procedures including the investigation, public hearing, decision-making process, and right to appeal provides a plaintiff with minimum levels of due process as long as the plaintiff is actually afforded a public hearing on the merits of the case. Once this adjudication on the merits occurs and a final decision is rendered, the doctrine of res judicata is clearly applicable. *See Allen v. West Virginia Human Rights Comm'n*, 174 W.Va. 139, 324 S.E.2d 99 (1984) (holding that due process implies an opportunity to be heard); *see also* W.Va.Code § 5–11–13(a) (1990) (mandating ex-

clusiveness of remedy of HRC procedure where final determination rendered).

**7.** The Appellant refers to the following wording in the determination letter sent to the Appellee by the HRC investigator to support the argument that the "no probable cause" determination was an adjudication on the merits: "Under the authority vested in me by the West Virginia Human Rights Act, as amended, I issue on behalf of the Commission the following determination as to the merits of the subject charge."

an administrative review of the decision. The HRC, after conducting the review, affirmed the initial determination and issued a "notice of right to sue" letter. *Id.* at 961–62. The plaintiff then filed suit in the Circuit Court of Kanawha County, whereupon Union Carbide removed the suit to federal court. *Id.* at 962.

The *Gray* court concluded that the HRC improperly issued the "notice of right to sue" letter because "[t]he Commission ... [had] no authority to issue the right to sue letter...." *Id.* at 963. The district court determined that the "notice of right to sue" letter was "void and of no effect" since statutorily the HRC can only issue such a letter when there has been no decision on the merits or no conciliation agreement reached by the HRC. *Id., see also* W.Va. Code § 5–11–13(b). Therein lies the flaw in the logic utilized by the district court. It is clear from the *Gray* decision that the court presumed that there had been an adjudication on the merits [8] of the discrimination complaint by the HRC when it made the "no probable cause" determination and conducted an administrative review of that determination. This is simply not the case as indicated by the HRC procedures outlined in Section II of this opinion and by this Court in *Allen v. West Virginia Human Rights Commission,* 174 W.Va. 139, 324 S.E.2d 99 (1984).

In *Allen,* this Court described the probable cause determination process as follows:

[U]nlike ordinary civil litigation, complaints before the Human Rights Commission are scrutinized in order to determine whether probable cause, traditionally the test for determining the legitimacy of complaints of criminal conduct, exists to substantiate the allegations in those complaints. This, however, to a certain extent, parallels the gatekeeping function performed by private attorneys who, prior to filing civil actions in the appropriate forum, determine the validity of complaints advanced by potential litigants, and is related to the role served

by the Commission in furnishing legal representation to complainants who reach the hearing stage of the administrative process.

*Id.* at 150, 324 S.E.2d at 110–11. Hence, we recognized that the investigation performed by the HRC was not a hearing.

Further, it was not until after the investigation and conciliation stages were completed that we addressed the importance of the hearing stage:

[T]he foundation on which the entire administrative structure is built is the ultimate disposition of complaints of unlawful discrimination through the adjudicatory hearing process. Without at least the potential, if not the likelihood, of a hearing on the merits of complaints of unlawful discrimination, the remainder of the administrative process is rendered a meaningless exercise in chest thumping.

*Id.* at 150–51, 324 S.E.2d at 111. Implicit in this language is the significant point that an adjudicatory hearing resulting in a decision on the merits of a discrimination case does not occur until this hearing phase.

■ Thus, we are unpersuaded by the prediction made by the district court in *Gray* as to how this Court would interpret the West Virginia Human Rights Act. To label the investigatory procedure utilized by the HRC in making a "no probable cause" determination an adjudication on the merits of the case would be a ruse. Accordingly, we hold that a "no probable cause" determination by the HRC is not an adjudication on the merits of a discrimination complaint since the parties have not been afforded a public hearing in which to litigate the merits of the facts and issues propounded in the complaint.

■ This holding is supported by this Court's decision in *Perilli v. Board of Education Monongalia County,* 182 W.Va. 261, 387 S.E.2d 315 (1989). In *Perilli,* we held that the plaintiff, Perilli, was entitled to a jury trial on the factual claims present-

---

**8.** The district court in *Gray* refers to "the special role of the Commission to *adjudicate* discrimination claims" and states that "the proper route for the Plaintiff to follow in seeking review of the *Commission's final decision on the merits* was to have appealed to the Circuit Court...." 637 F.Supp. at 963 (emphasis added).

ed in a sex discrimination case. *Id.* at 262, 387 S.E.2d at 316, Syl.Pt. 3. This holding which mandated a jury trial in circuit court was rendered despite the fact that the plaintiff had initially filed a complaint with the HRC. *Id.* Like the present case, the HRC made a "no probable cause" determination and issued a "notice of right to sue" letter pursuant to West Virginia Code § 5–11–13(b) prior to the commencement of the plaintiff's action in circuit court. *Id.* Similarly, the Appellee in the present case is entitled to pursue her age discrimination claim in circuit court.

## RES JUDICATA

■ This Court has previously stated in *Liller v. West Virginia Human Rights Commission*, 180 W.Va. 433, 376 S.E.2d 639 (1988) that the doctrine of res judicata only applies when "the decision ... [is] rendered pursuant to the agency's adjudicatory authority and the procedures employed by the agency must be substantially similar to those used in a court of law." *Id.* at 440, 376 S.E.2d at 646. We have also enunciated that the following three factors should be the focus of whether res judicata and collateral estoppel are applicable to a hearing body: "(1) whether the body acts in a judicial capacity; (2) whether the parties were afforded a full and fair opportunity to litigate the matters in dispute; and (3) whether applying the doctrines is consistent with the express or implied policy in the legislation which created the body." Syl.Pt. 3, in part, *Mellon–Stuart Co. v. Hall*, 178 W.Va. 291, 359 S.E.2d 124 (1987).

■ In applying these factors to the present case, it is clear that the HRC has only acted as an investigatory body, not a judicial body, in ascertaining whether probable cause existed to support the allegations in the complaint. This again is highlighted by the investigatory procedures set forth in Section II of this opinion which indicate that the investigator *may* conduct interviews of witnesses and order production of documents and completion of interrogatories, but none of this is even required prior to making a probable cause determination. Moreover, no type of for-

mal public hearing occurs at this stage, merely an investigation which is similar to the discovery process in a civil action. *See McCulty v. Rockefeller*, 570 F.Supp. 1455, 1459 (S.D.W.Va.1983) ("If the 'court' is an administrative agency, it must have been acting in a judicial capacity and the issues in dispute must have been properly before it.").

Consequently, the parties are not afforded any full and fair opportunity to litigate the matters in dispute at the probable cause determination stage. While the procedure does provide for the parties to submit evidence and names of witnesses, no opportunity to litigate is present. In fact, in the present case, the Appellee was not given the chance to provide her own account of what occurred or to submit the names of any witnesses. As a matter of record, she was not even provided with the evidence the Appellant presented to contradict her allegations until *after* the "no probable cause" determination had been made.

Finally, it is without question that the doctrine of res judicata would apply to the HRC decisions if a public hearing and final determination on the merits had occurred. This becomes evident in light of West Virginia Code § 5–11–13(a) (1990) which provides that the statutory procedure for pursuing a claim before the HRC "shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned."

Based upon the application of the factors enunciated in *Mellon–Stuart Co.*, we hold that while the doctrine of res judicata is applicable to the final determinations made by the HRC after conducting a public hearing on the merits of a discrimination complaint, it is not applicable to a "no probable cause" determination rendered by the HRC.

## EXCLUSIVENESS OF REMEDY

■ An ancillary matter which also must be addressed is the exclusiveness of remedies concerning discrimination claims discussed by this Court in *Price v. Boone*

*County Ambulance Authority,* 175 W.Va. 676, 337 S.E.2d 913 (1985) and provided for by the Legislature in West Virginia Code § 5–11–13(a). This Court held in syllabus point 1 of *Price* that "[a] plaintiff may, as an alternative to filing a complaint with the Human Rights Commission, initiate an action in circuit court to enforce rights granted by the West Virginia Human Rights Act." 175 W.Va. at 676, 337 S.E.2d at 913. We also stated that "[t]hese two avenues are, of course, mutually exclusive, as [West Virginia Code] § 5–11–13(a) makes clear." *Id.* at 679, 337 S.E.2d at 916.

The law concerning the exclusiveness of remedies is clear; a final determination on the merits of a discrimination case before the HRC precludes filing an action before the circuit court and vice versa. However, West Virginia Code § 5–11–13 must be read and considered in its entirety prior to determining whether the proceedings before the HRC have culminated in a final determination on the merits thereby excluding an action in circuit court.

West Virginia Code § 5–11–13(b) provides, in pertinent part:

> Notwithstanding the provisions of subsection (a) of this section, a complainant may institute an action against a respondent ... at any time within ninety days after the complainant is given notice of a right to sue pursuant to this subsection (b). . . . If a suit is filed under this section the proceedings pending before the commission shall be deemed concluded.
>
> The commission shall give a complainant who has filed a complaint a notice of a right to sue forthwith upon (1) the dismissal of the complaint within one hundred eighty days of the filing thereof for any reason other than a decision on the merits of the case, or (2) the expiration of a period of one hundred eighty days during which period no public hearing has been held on such complaint and the commission and the respondent have not entered into a conciliation agreement to which the complainant is a party: Pro-

vided, That the commission shall also give the complainant notice of a right to sue in any case in which, after the expiration of one year, the complaint has not been determined on its merits or a conciliation agreement entered into to which the complainant is a party.

Subsection (b) of West Virginia Code § 5–11–13 indicates that the procedures of the HRC are not exclusive when the complainant files a lawsuit in accordance with a "notice of right to sue" letter issued by the HRC under the following circumstances: 1) when the complaint is dismissed by the HRC within 180 days of filing of the complaint for any reason other than a final decision on the merits; 2) when no public hearing or conciliation agreement occurs within 180 days of filing the complaint; or 3) when, at the expiration of one year, no final determination on the merits or conciliation agreement has occurred. It is also evident that since the HRC routinely issues the "notice of right to sue" letters after a "no probable cause" determination, the HRC is complying with this statutory provision because no final determination on the merits, no public hearing and no conciliation agreement has occurred at this stage of the HRC proceedings. Thus, in this case, the Appellee was properly given a "notice of right to sue" letter after the "no probable cause" determination was made by the HRC. Such letter did not violate this Court's decision in *Price* or the exclusiveness of remedy provisions found in West Virginia Code § 5–11–13(a).[9]

Based upon the foregoing opinion, we answer the certified questions as formulated. This action is hereby dismissed from the docket of this Court.

Certified Questions Answered.

---

9. In fact, according to the statute, the Appellee should have been issued the "notice of right to sue" letter some four years earlier instead of being forced to have her case languish within the HRC with no action taken on it.