No. 12-0678 - SER Ten South Management Company v. Wilson

**FILED**

**June 19, 2013**

**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

Workman, Justice, concurring:

I join in the Court's holdings that the respondent's request for an administrative review meeting pursuant to West Virginia Code § 5-11-10 (2011) was timely; that the petitioner was not entitled to issuance of an order with detailed findings and conclusions supporting the Commission's finding of probable cause; that the petitioner was not entitled to subpoena all records reviewed by Paul Sheridan with respect to the administrative review meeting, and/or Mr. Sheridan's written recommendations; and that in the particular circumstances of this case, Mr. Sheridan was serving in a judicial role at the meeting and is therefore disqualified from further participation in this matter as counsel.

I write separately to discuss in more detail what the majority aptly describes as the "complete disconnect[]" between the statute governing the administrative review hearing, West Virginia Code § 5-11-10, and the regulation promulgated by the West Virginia Human Rights Commission, West Virginia Code of State Regulations § 77-2-4.14.f.2.[1]

---

[1]Title 77, Series 2 of the West Virginia Code of State Regulations, Rules of Practice and Procedure Before the West Virginia Human Rights Commission, was effective January 1, 1999.

1

West Virginia Code § 5-11-10 provides, in relevant part, that after a complainant has been served with a no-probable-cause letter, he or she may

> file with the commission a written request for a meeting with the commission to show probable cause for substantiating the allegations of the complaint. If it shall be determined after such investigation or meeting that probable cause exists for substantiating the allegations of the complaint, the commission shall immediately endeavor to eliminate the unlawful discriminatory practices . . . .

Under the clear and unambiguous language of the statute, the sole purpose of the meeting is to give the complainant a second chance to convince the Commission that probable cause exists. As this Court has previously explained,

> [i]f an administrative review of the 'no probable cause' determination occurs, the HRC reviews the investigator's recommendation *along with any new information submitted by the parties* and the initial 'no probable cause' determination is either affirmed, reversed and set for hearing, or remanded within the HRC for further investigation

*Jones v. Glenville State College*, 189 W. Va. 546, 551, 433 S.E.2d 49, 54 (1993) (emphasis supplied).

As noted by the majority, in *Jones* this Court found that the probable cause determination "to a certain extent, parallels the gatekeeping function performed by private attorneys who, prior to filing civil actions in the appropriate forum, determine the validity of complaints[.]" *Id.* at 552, 433 S.E.2d at 55 (quoting *Allen v. State Human Rights Com'n*, 174 W. Va. 139, 150, 324 S.E.2d 99, 110-11 (1984)). In determining whether a complainant has

2

demonstrated probable cause at the statutory "second chance" meeting, the Commission is exercising a purely executive function under W. Va. Code § 5-11-10. "[I]t is clear that the HRC has only acted as an investigatory body, not a judicial body, in ascertaining whether probable cause existed to support the allegations in the complaint." *Jones*, 189 W. Va. at 553, 433 S.E.2d at 56.

However, the regulation promulgated by the Commission, 77 CSR 2-4.14.f.2, describes the meeting as one in which "the Complainant shall have the burden of showing that the dismissal of the complaint is arbitrary, capricious, or not in accordance with the law."[2] This is, without question, a judicial review standard that is completely disconnected from the statute. Nothing in the statute suggests that the purpose of the meeting is to determine the validity of the initial no-probable-cause determination. Rather, the meeting is one in which the complainant gets a second chance to demonstrate probable cause, and the Commission gets a second chance to review the evidence and determine whether probable

[2]The regulation at issue provides: "The Commission's attorney or other designated person shall preside at the review and shall be provided with all information in the Commission file pertaining to the complaint under review. In the discretion of the presiding person, testimony taken at such review hearing may be transcribed or taken under oath or affirmation. The complainant shall have the burden of showing that the dismissal of the complaint is arbitrary, capricious, or not in accordance with the law. The presiding person, after considering the evidence, shall file a report and recommendation with the executive director which shall recommend that the dismissal of the complaint be upheld, reversed, or modified or that the complaint be remanded for further investigation. The report shall be filed within fifteen (15) days after the review."

cause exists. The complainant may present, and the Commission may consider, additional evidence and/or argument. *See Jones*, 189 W. Va. at 551, 433 S.E.2d at 54.

To demonstrate the disconnect between the statute and the regulation, let us envision a circumstance where a complainant brings additional evidence to the meeting, and/or makes additional or more persuasive argument as to the merits of the case. After reviewing this evidence and/or considering this argument, let us assume the Commission determines that probable cause exists, which is precisely what the statute permits it to do. What, then, would be the purpose of the Commission going on to determine whether the initial no-probable-cause finding was "arbitrary, capricious, or not in accordance with the law," which is what the regulation requires it to do? If the Commission determines that its initial finding was not "arbitrary, capricious, or not in accordance with the law," can it still go forward with the case based on its consideration of the new evidence or argument? Or was the complainant's presentation at the meeting, and the Commission's finding of probable cause, an exercise in futility?

Let us now consider the same scenario, but assume that the Commission first determines that its initial finding was not "arbitrary, capricious, or not in accordance with the law," which is precisely what the regulation commands it to do. What, then, would be the purpose of the Commission going on to permit the complainant "to show probable cause for substantiating the allegations of the complaint"? If the Commission determines that

4

probable cause exists, is it nonetheless precluded from going forward by virtue of its initial no-probable-cause finding, which it determined to be valid?

As the above demonstrates, the statute provides the complainant with a *right*: a second-chance opportunity to convince the Commission that probable cause exists. In contrast, the regulation takes away that right and instead imposes on the complainant a *burden*: to convince the Commission that its initial no-probable-cause determination was "arbitrary, capricious, or not in accordance with the law." As a concomitant, the statute imposes upon the Commission a *duty*: to determine at the conclusion of the complainant's presentation whether probable cause exists and, if so, to proceed to remedy the alleged discrimination. In contrast, the regulation imposes a *limitation* on the Commission's duty: if the initial no-probable-cause finding was legally sufficient under a judicial review standard, then there is a serious question as to whether the Commission can proceed to remedy the alleged discrimination, even if probable cause is found to exist at the conclusion of the complainant's presentation at the "second chance" meeting.

This Court has consistently held that

> [i]t is fundamental law that the Legislature may delegate to an administrative agency the power to make rules and regulations to implement the statute under which the agency functions. In exercising that power, however, an administrative agency may not issue a regulation which is inconsistent with, or which alters or limits its statutory authority.

5

Syl. Pt. 6, *Simpson v. W. Va. Office of Ins. Com'r*, 223 W. Va. 495, 678 S.E.2d 1 (2009); Syl.

Pt. 3, *Rowe v. West Virginia Department of Corrections*, 170 W. Va. 230, 292 S.E.2d 650

(1982).  Additionally:

> Any rules or regulations drafted by an agency must faithfully reflect the intention of the Legislature, as expressed in the controlling legislation.  Where a statute contains clear and unambiguous language, an agency's rules or regulations must give that language the same clear and unambiguous force and effect that the language commands in the statute.

Syl. Pt. 4, *Maikotter v. University of West Virginia Board of Trustees/West Virginia*

*University*, 206 W. Va. 691, 527 S.E.2d 802 (1999).  Similarly:

> 'Rules and Regulations of . . . [an agency] must faithfully reflect the intention of the legislature; when there is clear and unambiguous language in a statute, that language must be given the same clear and unambiguous force and effect in the . . . [agency's] Rules and Regulations that it has in the statute.'  Syl. pt. 4, *Ranger Fuel Corp. v. West Virginia Human Rights Commission*, 180 W. Va. 260, 376 S.E.2d 154 (1988).

Syl. Pt. 5, *Appalachian Power Co. v. Tax Dep't.*, 195 W. Va. 573, 466 S.E.2d 424 (1995)

(quoting Syl. Pt. 2, in part, *Chico Dairy Co. v. Human Rights Com'n*, 181 W. Va. 238, 382

S.E.2d 75 (1989).

These black-letter principles were anticipated, although not expressly formulated in

syllabus points, in *Anderson & Anderson Contractors, Inc. v. Latimer*, 162 W. Va. 803, 807-

08, 257 S.E.2d 878, 881 (1979), where this Court held that "[a]lthough an agency may have

power to promulgate rules and regulations, the rules and regulations must be reasonable and

conform to the laws enacted by the Legislature." *See also Sheppe v. West Virginia Bd. Of Dental Exmrs.*, 147 W. Va. 473, 483, 128 S.E.2d 620, 626 (1962) ("the statute . . . is the ultimate authority and no rules and regulations which are in conflict therewith can be enforced.").

Turning again to the statute at issue in this case, West Virginia Code § 5-11-10, we look at the right which is granted to the complainant in clear, unambiguous terms: he or she may "file with the commission a written request for a meeting with the commission to show probable cause for substantiating the allegations of the complaint." We look then at the duty which is imposed on the Commission in equally clear, unambiguous terms: "If it shall be determined after such investigation or meeting that probable cause exists for substantiating the allegations of the complaint, the commission shall immediately endeavor to eliminate the unlawful discriminatory practices . . . ." Nothing in the statute requires the complainant to demonstrate, or the Commission to rule upon, whether the initial no-probable-cause determination can be sustained under a judicial standard of review. That burden is imposed solely by the regulation at issue, 77 CSR 2-4.14.f.2. Further, nothing in the statute limits or extinguishes the Commission's authority to find probable cause and go forward with a case, based upon the complainant's presentation at the meeting. That limitation on the Commission's authority, which is urged by the petitioner, is based solely on the regulation and is a plausible interpretation of its language.

7

In short, the statute contains clear and unambiguous language, but the regulation does not give the statute clear and unambiguous effect. Rather, the regulation takes away the right given to the complainant by the statute, and imposes a burden in its stead; and takes away the authority given to the Commission by the statute, and imposes a limitation of authority in its stead. In short, the regulation, 77 CSR 2-4.14.f.2, does not "faithfully reflect the intention of the Legislature, as expressed in the controlling legislation . . . ," Syl. Pt. 4, *Maikotter,* 206 W. Va. at 692, 527 S.E.2d at 803; *see also* Syl. Pt. 5, *Appalachian Power,* 195 W. Va. at 579, 466 S.E.2d at 430; Syl. Pt. 2, in part, *Chico Dairy,* 181 W. Va. at 239-40, 382 S.E.2d at 76-77; and "is inconsistent with, or . . . alters or limits [the HRC's] statutory authority . . . ," Syl. Pt. 6, *Simpson,* 223 W. Va. at 497, 678 S.E.2d at 3.

Turning back to the facts in this case, had the meeting of September 7, 2011, been held in conformity with the statute, not the regulation, it is clear that its purpose would have been purely executive. *Jones*, 189 W. Va. at 553, 433 S.E.2d at 56. Unfortunately, because the meeting was held in conformity with the regulation, its purpose was judicial, at least in part, and therefore Mr. Sheridan must be deemed to have been performing a judicial function insofar as he reviewed the evidence, heard the parties' arguments, and made a recommendation to the Acting Executive Director as to whether the previous no-probable-cause finding was "arbitrary, capricious, or not in accordance with the law."

8

I agree wholeheartedly with the majority that the fault here lay not with Mr. Sheridan, who was at all times performing the tasks required of him by statute,[3] case law,[4] and his client, the Commission, and did nothing improper or unethical. Rather, the fault lay with the Commission, which promulgated a rule that is totally inconsistent with the statute and sets up a procedural road block for complainants, a road block entirely inconsistent with the Commission's statutory mission to provide a forum for resolution of discrimination complaints that are supported by probable cause. Although I agree that the validity of 77 CSR 2-4.14.f.2 is not squarely before us, neither of the parties having challenged the rule and a determination of its validity not being necessary to disposition of the case, this is clearly an issue that the Commission should consider as it goes forward.

Accordingly, I concur.

---

[3]West Virginia Code § 5-11-7 provides that "[t]he commission may call upon other officers, departments and agencies of the state government to assist in its hearings, programs and projects. The Attorney General of the state shall render legal services to the commission upon request made by the commission or by the chairman or the executive director thereof."

[4]*Allen v. State Human Rights Com'n*, 174 W. Va. 139, 161 & n.28, 324 S.E.2d 99, 122 & n. 28 (1984) ("the Attorney General has a mandatory duty, under West Virginia Code § 5-11-7 (1979 Replacement Vol.), to furnish all legal services required by the Human Rights Commission."); *see Vest v. Bd. of Educ. of Cty. of Nicholas*, 193 W. Va. 222, 227 n.10, 455 S.E.2d 781, 786 n.10 (1995) ("By virtue of W. Va. Code, 5-11-7 (1967), the State prosecutes all claims in which probable cause is found and in which the complainant is not represented by private counsel, and the Attorney General has a mandatory duty to furnish all legal services required by the Commission.").