IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 12-0678

_____

FILED

June 19, 2013
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA, EX REL. TEN SOUTH
MANAGEMENT COMPANY LLC, D/B/A VISTA VIEW
Petitioner

v.

HONORABLE ROBERT B. WILSON, ACTING CHIEF ADMINISTRATRATIVE
LAW JUDGE OF THE WEST VIRGINIA HUMAN RIGHTS COMMISSION and
MONICA ROBINSON,
Respondents

_____

PETITION FOR WRIT OF MANDAMUS

WRIT GRANTED AS MOULDED

_____

Submitted: January 8, 2013
Filed: June 19, 2013

Charles R. Bailey, Esq.                    Patrick Morrisey, Attorney General
David J. Mincer, Esq.                      J. Robert Leslie, Deputy Attorney General
Bailey & Wyant, PLLC                       Charleston, West Virginia
Charleston, West Virginia                  Counsel for the Respondents
Counsel for the Petitioner

CHIEF JUSTICE BENJAMIN delivered the Opinion of the Court.

JUSTICE WORKMAN concurs and reserves the right to file a concurring opinion.

SYLLABUS BY THE COURT

1.      "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy."  Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

2.      "A 'no probable cause' determination by the West Virginia Human Rights Commission is not an adjudication on the merits of a discrimination complaint since the parties have not been afforded a public hearing in which to litigate the merits of the facts and issues propounded in the complaint."  Syl. pt. 1, *Jones v. Glenville State College*, 189 W. Va. 546, 433 S.E.2d 49 (1993).

3.      An attorney who acts as a hearing officer for the West Virginia Human Rights Commission for the purpose of an administrative review of a "no probable cause" determination may not later represent the complaining party in proceedings before the Commission on the claim.

Benjamin, Justice:

The petitioner, Ten South Management Company, LLC, d/b/a Vista View ("Ten South"), seeks the issuance of a writ of mandamus to compel the respondent, the Honorable Robert B. Wilson, Acting Chief Administrative Law Judge ("ALJ Wilson") of the West Virginia Human Rights Commission ("the Commission"), to issue an order dismissing the case filed by the respondent, Monica Robinson ("Robinson"), before the Commission. The petitioner alternatively seeks a written order, detailing findings upon which the Commission based its determination to reverse its earlier decision to dismiss Robinson's claim, as well as a subpoena for all documents reviewed in the course of that administrative review. Finally, Ten South seeks to compel the Commission to disqualify the Assistant Attorney General now representing Robinson from further representation because he acted as a review hearing officer when the Commission reconsidered its initial dismissal of Robinson's claims. For the reasons stated herein, we decline to issue the writ insofar as it requests that Robinson's claims be dismissed, and demands that the Commission be required to state what facts upon which it reversed its earlier determination. We further decline to order that a subpoena be issued to allow Ten South access to any documents that were reviewed in the course of the administrative review. We issue the writ to clarify that an attorney who acted as a review hearing officer for the Commission when a claimant requested reconsideration of a "no probable cause" finding may not later represent that claimant in proceedings before the Commission on the claim.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Ten South, operates an apartment complex in Charleston, West Virginia.  From August of 2009 to January 4, 2010, respondent Robinson was employed by Ten South as a leasing agent.  After a performance review in December of 2009, Robinson alleged she was demoted to the position of Recertification Clerk.  Robinson was terminated on January 4, 2010.  On January 11, 2011, Robinson filed a complaint with the Commission alleging that she was unlawfully discriminated against by Ten South.  Ten South denied Robinson's charge of discrimination.

On June 9, 2011, Yodora P. Booth, Director of Operations for the Commission, issued a finding that no probable cause ("NPC") was found in Robinson's complaint and ordered that it be dismissed.  Contained in the order were instructions on how to request a reconsideration of the Commission's initial determination of NPC, or a "second chance" to pursue her claim before the Commission.  The procedure detailed in the order was as follows:

> The West Virginia Human Rights act, as amended, provides that you may request an Administrative Review of the No Probable Cause determination. **Such request shall be made within ten (10) days of receipt of this letter.**  The request for review **<u>must be in writing</u>** and must state specifically the grounds relied on and may contain new evidence not previously considered by the Commission.  If your request is favorably considered, you will be notified by correspondence as to the details of the hearing.  In which case, you have a right to be represented by an Attorney, if you have one.  Requests which are not in compliance with the aforementioned requirements will not be considered.

(Emphasis in original).  The certificate of service indicated that the order was mailed to Robinson at an address in St. Albans, Kanawha County, on June 10, 2011.

On June 24, 2011, Robinson appeared at the Commission's office and filed a two-page handwritten request for reconsideration of the NPC finding.  In this request she detailed additional allegations of discrimination against Vista View that were not included in the original complaint.

The administrative review was scheduled for September 17, 2011. The hearing was not held at the Commission's office; it was held in the office of the Attorney General's Civil Rights Division. Assistant Attorney General Paul R. Sheridan conducted this review hearing.  The stated purpose of the hearing was "for the presentation of objections to the NPC finding and the provision of any additional evidence."  Vista View was given an opportunity to respond and did appear at this proceeding.

On October 19, 2011, the Commission reversed the earlier NPC finding, and found that there was probable cause alleged in the complaint. In a letter signed by the then-acting executive director of the Commission, Phyllis H. Carter, Robinson was informed that her complaint would proceed to a hearing before an administrative law judge.  The letter further stated that pursuant to the Human Rights Act, W. Va. Code § 5-

11-10 (1994), Robinson would be represented by the Attorney General's office if she did not have private counsel.

On October 13, 2011, Robinson amended her complaint, alleging that Vista View engaged in pay disparity between herself and similarly situated white co-workers. She again alleged that her termination on January 4, 2010, was due to her race.

On October 31, 2011, Mr. Sheridan filed a notice of appearance on behalf of Robinson. On this same day, Ten South filed an answer to the Amended Complaint of Robinson, denying her allegations of discrimination. On March 29, 2012, Ten South filed a motion to disqualify Mr. Sheridan from representing Robinson in proceedings before the Commission, arguing that he was conflicted from representing Robinson because he had acted in a judicial capacity while conducting the administrative review of the NPC finding. The motion to disqualify Mr. Sheridan was denied by ALJ Wilson on April 6, 2012. In his order, ALJ Wilson found that the administrative review hearing was not an adjudication in nature; therefore, Mr. Sheridan was not disqualified from later representing Robinson. ALJ Wilson further found that Ten South did not object to Mr. Sheridan serving as a hearing officer for the administrative review and that Ten South had not been prejudiced by Mr. Sheridan's service as hearing officer.

Ten South filed its Petition for Writ of Mandamus in this Court on June 1, 2012. On June 6, 2012, ALJ Wilson entered an order staying all proceedings, including

4

discovery depositions and pre-trial mediation. The public hearing scheduled for July 10, 11 and 12, 2012, was continued until this Court resolves this matter.

## II. STANDARD OF REVIEW

This is an original jurisdiction proceeding. We are not directly reviewing a ruling or determination by a lower tribunal. Our standard for original mandamus jurisdiction is as follows:

> A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

## III. ANALYSIS

Ten South raises three grounds upon which it believes it is entitled to a writ of mandamus. The first is that Robinson's request for Administrative Review of the NPC finding was untimely filed. The second is that the Commission failed to issue sufficient findings or explanation as to why the Commission reversed its initial NPC findings. Finally, Ten South argues that Mr. Sheridan should be disqualified from representing Robinson because he acted in an adjudicatory fashion when he conducted the administrative review of Robinson's complaint. Each ground shall be addressed separately.

5

## A. Timeliness

Ten South submits that Robinson's request for administrative review, or a "second chance," should have been filed by June 21, 2011, and that it was three days overdue when it was filed on June 24, 2011. The timeliness of the request is mandated by W. Va. Code § 5-11-10 (1994), which states:

> If it shall be determined after such investigation that no probable cause exists for substantiating the allegations of the complaint, the commission, shall, within ten days from such determination, cause to be issued and served upon the complainant written notice of such determination, and the said complainant or his attorney may, within ten days after such service, file with the commission a written request for a meeting within the commission to show probable cause for substantiating the allegations of the complaint.

The Commission has promulgated procedural rules that govern practice and procedure before the Commission. W. Va. Code R. § 77-2-2.13 (1999) states that when the term "service" is used, it means service within Rule 4 of the West Virginia Rules of Civil Procedure ("W. Va. R. Civ. P."). Rule 4 of the W. Va. R. Civ. P. details the acceptable manner of service: by any person over the age of 18 years who is not a party to the action through delivery of the summons and complaint to the party; by the sheriff delivering the summons and complaint to the party; by certified mail or by regular mail addressed to the party; or by forwarding a copy of the summons and complaint to the Secretary of State to accept service as specified by any applicable statute.

Further guidance may be found in W. Va. Code R. § 77-2-4.14.a (1999), which details what constitutes service of a NPC determination and how an aggrieved complainant may request a review of that determination. This section states,

> A complainant may apply to the Commission, through its compliant director or such other person as the executive director may designate, for an administrative review of the dismissal of her/his complaint. Requests for review shall be in writing, shall state specifically the grounds relief on, may contain new evidence not previously considered by the Commission and shall be filed at the Commission office within ten (10) days from the date of the complainant's receipt of such copy.

When used in conjunction with the applicable time period in which she had to request administrative review of the NPC finding, Robinson argues that the word "service" should be based upon her actual receipt of the document. She also points to the language of the document that the Commission sent to her, which notes that her request for administrative review is due "within ten (10) days of receipt of this letter." She argues her filing on June 24, 2011, was within ten days of her receipt of the letter.

We agree with Robinson's interpretation of the filing deadline. While the statute uses the word "service," the rules interpreting that statute promulgated by the Commission clearly detail "receipt" as the operative phrase in terms of when the time starts for calculation of the deadline. Robinson filed her request for administrative review on June 24, 2012, fourteen days after the NPC document was placed in the U.S.

Mail but within 10 days of Robinson's receipt thereof. Ten South's interpretation of the deadline is unduly restrictive and seems to disregard the fact that the NPC document advised Robinson that she had to take action within ten days of her receipt of the letter. Ten South cannot show that it has a clear legal right to the dismissal of Robinson's request for administrative review and we deny the requested writ of mandamus on this ground.[1]

## B. Sufficiency of Findings

Ten South's next basis for the issuance of a writ of mandamus is based on the lack of specific findings in the Commission's reconsideration of its initial NPC finding. Ten South argues that the Commission was obligated to provide findings of fact in support of the decision to reconsider the initial NPC finding. Ten South further posits that it was entitled to any documents or evidence submitted by Robinson and any written report or recommendation written by Mr. Sheridan, in his role as hearing officer for the administrative review. Ten South argues that without these documents it is impossible to determine whether and how Robinson met her burden to show that the NPC determination was arbitrary, capricious or not in accordance with the law.

---

[1]     Robinson's counsel argues that Ten South failed to timely object to Robinson's request for reconsideration. Inasmuch as we have resolved the issue on other grounds, we do not address this argument.

W. Va. Code § 5-11-10 details the review process. It mandates that after an initial NPC finding, the complainant may request an administrative review. The statute states that

> . . . [i]f it shall be determined after such investigation or meeting that probable cause exists for substantiating the allegations of the complaint, the commission shall immediately endeavor to eliminate the unlawful discriminatory practices complained of by conference, conciliation and persuasion.

The procedure for the review hearing is further refined in W. Va. Code R. § 77-4-4.14.f.1 *et seq.* (1999). W. Va. Code R. §77-4-4.14.f.2 allows for the Commission's attorney or other designated person to preside at the administrative review. The rules allow for this person to be provided with the entire Commission file pertaining to the complaint under review. The person presiding at the review hearing is authorized to take any testimony under oath or to transcribe the testimony, but the rules do not require that this happen.

The standard for review at the administrative review hearing is contained in W. Va. Code R. § 77-4-4.14.f.2. This rule states, in pertinent part,

> The complainant shall have the burden of showing that the dismissal of the complaint is arbitrary, capricious, or not in accordance with law. The presiding person, after considering the evidence, shall file a report and recommendation with the executive director which shall recommend that the dismissal of the complaint be upheld, reversed, or modified or that the complaint be remanded for further investigation. The report shall be filed within fifteen (15) days after the review.

9

W. Va. Code R. § 77-4-4.14.f.3 states that if it is determined after administrative review of an initial NPC finding that probable cause exists to credit the allegations of the complaint, a recommended finding of probable cause will be made and reported to the chairperson or executive director of the Commission. This allows the chairperson or executive director to reopen the case or make such other disposition as he or she deems appropriate.

The Commission's duly promulgated rules specifically state that the determinations made by it after an administrative review do not amount to a determination of the merits of a case. W. Va. Code R. § 77-4-4.14.f.6 states,

> The determination of the Commission or executive director regarding an administrative review is not a determination on the merits of the case. Upon a finding of no probable cause, a dismissal order, accompanied by a "right to sue" letter, shall be provided to the complainant.

Nowhere in the rules does the administrative review contemplate the issuance of an order with the types of findings of fact being sought by Ten South. Ten South cites no case law, statute, rule or regulation that would entitle it to this type of order. Instead, at this stage in the proceeding, the Commission acts as gatekeeper to determine whether complaints will be set for further hearings and development of evidence or dismissed for lack of probable cause.

10

The NPC finding itself is not an adjudication of the case. We have held,

> A "no probable cause" determination by the West Virginia Human Rights Commission is not an adjudication on the merits of a discrimination complaint since the parties have not been afforded a public hearing in which to litigate the merits of the facts and issues propounded in the complaint.

Syl. pt. 1, *Jones v. Glenville State College*, 189 W. Va. 546, 433 S.E.2d 49 (1993). This is a preliminary ruling on the part of the Commission, not a final adjudication of the merits of the complaint. An expansive order at this stage simply is not contemplated by the rules or statute. It is instead the final order that is the adjudication of the complaint and claims which is an appealable order. As such, we find that there is no authority for Ten South's requests for detailed findings of fact that support the Commission's decision after an administrative review that there was probable cause to Robinson's complaint. Without such a showing that Ten South has a clear legal right to the requested relief, this Court cannot issue a writ of mandamus on that ground.

Ten South had also requested that this Court require the Acting Chief ALJ to issue a subpoena for all records reviewed by the hearing officer in this administrative review. We find no authority in the controlling statute and regulations providing that Ten South have access to this type of information. Therefore, we cannot compel the issuance

11

of a subpoena for this information and Ten South is not entitled to a writ of mandamus on this ground.

## C. Conflict of Interest

The final ground upon which the Petitioner seeks issuance of a writ of mandamus is to address the apparent conflict of an assistant attorney general representing Robinson after that same assistant attorney general previously acted as the hearing examiner who made recommendations to the Commission that resulted in the reinstatement of Robinson's complaint. After the Commission's initial NPC finding was reversed and probable cause was found for Robinson's complaint, Mr. Sheridan entered a notice of appearance as counsel for Robinson. The matter has now been set for hearing, albeit stayed *sua sponte* by ALJ Wilson. Ten South posits that Mr. Sheridan's appearance as counsel violated Rule 1.12 (a) of The West Virginia Rules of Professional Conduct because Mr. Sheridan acted as a judge and lawyer in the same matter.

From the outset we note that since the time this petition for writ of mandamus was filed and the issuance of this opinion, Mr. Sheridan is no longer employed as an Assistant Attorney General. While the immediate question of whether Robinson's counsel may represent her in these proceedings is moot, the likelihood of future recurrence of this issue warrants discussion by this Court. "A case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their

adversarial vitality, if such issues are capable of repetition and yet will evade review." Syl. pt. 1, *State ex rel. M.C.H. v. Kinder*, 173 W.Va. 387, 317 S.E.2d 150 (1984); *see also State ex rel. Fillinger v. Rhodes*, ___ W. Va. ___, 741 S.E.2d 118 (March 12, 2013) ("This Court has addressed issues that are likely to arise in the future on a continuing basis that are of special importance to the public and to the bar even when a settlement has been reached.").

Rule 1.12 of the Rules of Professional Conduct prohibits a former judge or arbitrator from representing anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator or law clerk, unless all parties in the proceedings consent after consultation. Ten South objected to Mr. Sheridan's appearance as Robinson's counsel.[2]

As a preliminary matter, we find that under the Commission's procedural rules, the Commission's attorney or other designated person is to preside at the administrative review hearing. W. Va. Code R. § 77-2-4.14.f.2. The petitioner has not asked this Court to invalidate this rule. Instead, the petitioner asks that Mr. Sheridan be disqualified from serving as Robinson's counsel "in further proceedings before the

---

[2] Upon our review of the record we find that contrary to the April 6, 2012, order of ALJ Wilson denying Ten South's motion for disqualification of Mr. Sheridan, Ten South did in its answer to the amended complaint object to Mr. Sheridan's representation of Robinson.

13

Human Rights Commission." Because Mr. Sheridan presided at the administrative review hearing in an adjudicatory role as the hearing officer for the Commission, Ten South argues that Mr. Sheridan is conflicted from now representing Robinson.

Robinson argues that the Attorney General is mandated to represent the Commission,[3] and that the procedural rules for the Commission contemplate and authorize the actions taken by Mr. Sheridan throughout this proceeding, including serving as hearing officer during the administrative review. Robinson posits that the role of legal adviser and legal advocate are generally encompassed in the meaning of the term "legal services" and that the Commission often looks to counsel for advice in discerning probable cause cases. Furthermore, Robinson argues that because the NPC determination was not an adjudication of the merits of her complaint, Mr. Sheridan did not serve in an adjudicatory role.

---

[3]    W. Va. Code § 5-11-7 (1967) states,

> The commission may call upon other officers, department and agencies of the state government to assist in its hearings, programs and projects. The attorney general of the state shall render legal services to the commission upon request made by the commission or by the chairman or the executive director thereof.

14

Despite Robinson's arguments that Mr. Sheridan's actions were investigatory, we find that a careful review of the actions taken in the course of Mr. Sheridan's role as the hearing office is necessary. Those duties included listening to the evidence presented by Robinson in support of her complaint. Mr. Sheridan was entitled to determine whether the hearing was to be transcribed. He was authorized to administer an oath. He evaluated the evidence presented. He then made recommendations to the Commission as to whether Robinson's complaint should go further. While the ultimate decision about whether probable cause had been established was not his—and we do not know what Mr. Sheridan's recommendation may have been—Mr. Sheridan nonetheless heard evidence, weighed the evidence and made a recommendation to the Commission about what needed to be done in this case. After the Commission found probable cause to continue with Robinson's complaint, Mr. Sheridan then entered a notice of appearance on behalf of Robinson.

Although Mr. Sheridan was not the judge in this matter, because he did not have the final authority to render a decision, he nonetheless did adjudicate matters within this proceeding, within a normal definition of the word. His actions were similar to those of a judicial referee or hearing examiner, who hears the evidence of the parties, weighs it and analyzes it, and then makes recommendations to a judge, who has the ultimate decision-making authority. Therefore, Mr. Sheridan's representation of Robinson in this matter is inconsistent with the conflict of interest rationale of Rule 1.12 of the West Virginia Rules of Professional Conduct.

However, we further find that Mr. Sheridan's disqualification in this case was not the result of any improper or unethical conduct on his part. The determination of this issue turns on an issue related to the validity of W. Va. C. R. § 77-2-4.14.f.2, as discussed herein. That regulation describes what we have deemed to be a judicial review that is not necessarily contemplated by statute. The statute upon which this regulation is based contemplates the Commission reviewing the initial recommendation "along with any new information submitted by the parties and the initial 'no probable cause" determination is either affirmed, reversed and set for hearing, or remanded within the Commission for further investigation." *Jones v. Glenville State College*, 189 W. Va. 546, 551, 433 S.E.2d 49, 54 (1993).

In *Jones*, we noted that the probable cause determination "to a certain extent, parallels the gatekeeping function performed by private attorneys who, prior to filing civil actions in the appropriate forum, determine the validity of complaints. . . ." Id., at 552, 433 S.E.2d at 55 (quoting *Allen v. State Human Rights Com'n*, 174 W. Va. 139, 150, 324 S.E.2d 99, 110–11 (1984)). The Commission's probable cause determination also parallels the gatekeeping function performed by a prosecuting attorney, who prior to and even after submitting a criminal matter to a grand jury, determines whether the evidence is sufficient to proceed with the case. *State ex rel Hamstead v. Dostert*, 173 W. Va. 133, 138-90, 313 S.E.2d 409, 415 (1984) ("With respect to the determination of whether to seek an indictment, the ultimate criterion must

16

be whether, in the prosecutor's professional judgment, it appears from the evidence that there is probable cause to believe that an offense has been committed and that the defendant committed it."); *State ex rel. Skinner v. Dostert*, 166 W. Va. 743, 752, 278 S.E.2d 624, 631 (1981) ("The prosecuting attorney, in his sound discretion, may refrain from prosecuting a cause or, having commenced a prosecution, may move the dismissal of a cause, when in good faith and without corrupt motivation or influence, he thinks that the guilt of the accused is doubtful or not capable of adequate proof."); *State ex rel. Miller v. Smith*, 168 W. Va. 745, 755–756, 285 S.E.2d 500, 506 (1981) ("Prosecuting attorneys are executive officers, see W. Va. Const. art VII, § 1; W. Va. Code § 5-3-2 (1979 Replacement Vol.), §7-4-1, and in the performance of their executive duties they are not subject to the judicial writ of prohibition[.]").

In determining whether the complainant has demonstrated probable cause at the statutory "second chance" meeting, the Commission is exercising a purely executive function. "[I]t is clear that the HRC has only acted as an investigatory body, not a judicial body, in ascertaining whether probable cause existed to support the allegations in the complaint." *Jones,* 189 W. Va. at 553, 433 S.E.2d at 56.

However, the regulation promulgated by the Commission, W. Va. Code R. § 77-2-4.14.f.2, describes this meeting as one in which "the Complainant shall have the burden of showing that the dismissal of the complaint is arbitrary, capricious, or not in accordance with the law." This is, without question, a judicial review standard that is

17

completely disconnected from the statute and, indeed, makes no sense in this context. Nothing in the statute states, suggests or even permits an inference that the purpose of the meeting is to determine the validity of the initial NPC determination. Rather, the meeting is one in which the complainant gets a second chance to demonstrate probable cause, and the Commission gets a second chance to review the evidence and determine whether probable cause exists. The complainant may present, and the Commission may consider, additional evidence and/or argument. See *Jones*, 189 W. Va. at 551, 433 S.E.2d at 54.

It is within this conflict between the statute and the regulation that Mr. Sheridan found himself placed when he acted as the hearing officer. Since the statute contemplates the review of additional evidence by the Commission, the regulation creates a quasi-judicial proceeding in which Mr. Sheridan was clearly performing judicial tasks. The fault is not with Mr. Sheridan, who was at all times performing the tasks assigned to him by his client, the Commission. Fault lies with the Commission, which promulgated a rule that is inconsistent with the statute and created a no-win situation for its counsel. However, although the validity of the regulation is questionable, this issue is not directly before us in this petition for writ of mandamus[4] and so we decline to rule on that issue at this time.

---

[4] " ' "In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken." Syllabus Point 1, *Mowery v. Hitt*, 155 W. Va. 103[, 181 S.E.2d 334] (1971).' Syl. pt. 1, *Shackleford v. Catlett*, 161 W. Va. 568, 244 S.E.2d (continued . . .)

18

Because of the conflicting standards between statute and regulation, Mr. Sheridan was unwittingly placed in a position resulting in his technical violation of Rule 1.12 of the Rules of Professional Conduct. Although this was an unintentional technical violation by Mr. Sheridan, we hold that an attorney who acts as a hearing officer for the West Virginia Human Rights Commission for the purpose of an administrative review of a "no probable cause" determination may not later represent the complaining party in proceedings before the Commission on the claim.

We conclude that Ten South has a clear legal right to the relief requested: the disqualification of Mr. Sheridan. We further find that ALJ Wilson should have entered an order that disqualified Mr. Sheridan from representing Robinson in proceedings before the Commission. Finally, we find that use of the writ of mandamus in the instant proceeding is comparable to the typical issuance of a writ of prohibition challenging a circuit court's ruling on a motion for disqualification. This Court has consistently found that use of a writ of prohibition is an appropriate mechanism to challenge a lower court's ruling on disqualification of counsel. *See State ex rel. Keenan v. Hatcher*, 210 W.Va. 307, 311, 557 S.E.2d 361, 365 (2001); *State ex rel. Ogden*

---

327 (1978)." Syl. pt. 3, *Voelker v. Frederick Business Properties Co.*, 195 W. Va. 246, 465 S.E.2d 246 (1995).

19

*Newspapers, Inc. v. Wilkes*, 198 W.Va. 587, 589, 482 S.E.2d 204, 206 (1996); *State ex rel. McClanahan v. Hamilton*, 189 W.Va. 290, 296, 430 S.E.2d 569, 575 (1993). The rationale for such a finding was succinctly set forth in *Ogden Newspapers*, wherein we stated:

> The reason that a writ of prohibition is available in this Court to review a motion to disqualify a lawyer is manifest. If a party whose lawyer has been disqualified is forced to wait until after the final order to appeal, and then is successful on appeal, a retrial with the party's formerly disqualified counsel would result in a duplication of efforts, thereby imposing undue costs and delay. *See State ex rel. DeFrances v. Bedell*, 191 W. Va. at 516, 446 S.E.2d at 909.
>
> Conversely, if a party who is unsuccessful in its motion to disqualify is forced to wait until after the trial to appeal, and then is successful on appeal, not only is that party exposed to undue costs and delay, but by the end of the first trial, the confidential information the party sought to protect may be disclosed to the opposing party or made a part of the record. Even if the opposing party obtained new counsel, irreparable harm would have already been done to the former client. The harm that would be done to the client if it were not allowed to challenge the decision by the exercise of original jurisdiction in this Court through a writ of prohibition would effectively emasculate any other remedy.

198 W. Va. at 589–90, 482 S.E.2d at 206–7.

The petitioner is entitled to the writ of mandamus on this issue.

## IV. CONCLUSION

For the foregoing reasons, we deny the requested writ of mandamus insofar as Ten South requested dismissal of the Robinson complaint on the ground that the request for reconsideration was untimely. We further deny the requested writ of mandamus that would require the Commission to explain its reasons for granting Robinson's request for reconsideration and issue an order compelling the issuance of subpoena for the records reviewed in the course of the administrative hearing. We grant the writ of mandamus as it relates to the representation of Robinson by Mr. Sheridan. We find that through no fault of his own, Mr. Sheridan is disqualified from further representation of Robinson because he previously acted in an adjudicatory fashion when he oversaw the administrative hearing after the Commission initially dismissed the Robinson complaint, and he represented the Commission itself in the earlier stages of this proceeding.

Writ granted as Moulded.